HENRY CHAPIN, Judge of Probate, *vs.* RICHARD WATERS.

An executor petitioned for leave to sell his testator's real estate for the payment of debts and legacies, but in the statement in the petition of the assets in his hands he did not include a debt due from himself to the estate. Had he included it, the excess of liabilities over the assets in his hands would have been little or nothing. *Held,* that the sale was a breach of his bond for faithful administration; that it was no defence that the sale was a pretence for the purpose of defeating a mortgage by the devisee given to defraud creditors, or that the executor never received anything from the sale; and that under the Gen. Sts. *c.* 101, § 28, execution should be awarded in favor of any one interested under the devise in the land sold, who had not assented to the sale.

CONTRACT brought for the benefit of Mary M. Titus, on a joint and several bond to the judge of probate for this county, dated August 1, 1851, entered into by Lewis Torrey, as principal, and the defendant and Dexter Putnam, as sureties, conditioned that Torrey, who had been appointed executor of the will of John Titus, Sen., should faithfully administer the estate of the testator. Trial in this court, before *Chapman*, C. J., who reported the case for the consideration of the full court, substantially as follows:

John Titus, Sen., died in 1851, leaving a will, which was duly proved, and by which he devised certain real estate to his son John Titus, Jr., and appointed Torrey executor. Letters testamentary were issued to Torrey, and he gave the bond in suit, and returned an inventory of the estate, in which the personal property was valued at $273, and on the back of which was a list of debts due to the deceased. Among these was a note from the executor to the testator, dated January 11, 1848, for $685, and bearing indorsements of the payment on April 1, 1849, of interest to date, and of the payment on September 20, 1849, of $34. This note was due from the executor to the estate.

On December 6, 1852, the executor petitioned the Probate Court, setting forth that the legacies and debts already ascertained and charges of administration amounted to $818, and that the personal estate in his hands amounted to $285, leaving a balance against the estate of $533. The petition prayed for leave to sell real estate for the payment of debts and legacies. Leave was granted, and the executor, in April, 1853, in pursuance of

the license, sold part of the real estate which had been devised to John Titus, Jr.

On January 4, 1854, John Titus, Jr., made a mortgage of all his real and personal estate to James T. Howard, which was fraudulent as to creditors, and believed to be without considera-. tion ; and he died in September 1854, intestate, leaving Mary M. Titus, who was of age, and two other children, his heirs at law.

On November 1, 1854, the executor petitioned the Probate Court, setting forth that the legacies and debts now ascertained and charges of administration amounted to $1177 ; that the personal estate, " as per the inventory thereof returned," amounted to $273 ; that the price of cattle sold, not inventoried, amounted to $37 ; and that the proceeds of the real estate sold amounted to $528, so that the amount in his hands was $838, leaving a balance against the estate of $339. The petition prayed for leave to sell more real estate to meet this balance. Leave was granted, and the executor, in December 1854, in pursuance of the license, sold to Obadiah Morse some more of the real estate which had been devised to John Titus, Jr., and executed and delivered a deed to the purchaser.

This second sale was made for the purpose of defeating the mortgage to Howard and for the benefit of the heirs of John Titus, Jr., except Mary M. Titus, who refused to assent to the transaction or to have anything to do with it. The executor never received anything on this sale, and has never rendered any account. An entry to foreclose the mortgage was made January 25, 1855, and on August 31, 1858, it was sold and assigned to · Morse, who now claims to hold the land under the foreclosure. Mary M. Titus contended that if the execu.or had included in the amount of personal estate in his hands, stated in the petitions for sale, the debt due from him to the estate, it would have appeared that there was no occasion to sell real estate, and that it was a breach of duty in him to make such sale.

*T. G. Kent,* for the plaintiff.

*G. F. Verry & F. A. Gaskill,* for the defendant, cited *Dublin v. Chadbourn,* 16 Mass. 433 ; *Laughton* v. *Atkins,* 1 Pick. 535 547 ; *Loring* v. *Steineman,* 1 Met. 204 ; *Parcher* v. *Bussell,* 11

Cush. 107 ; *Parker* v. *Parker*, Ib. 519, 524, 529, and cases cited ; *Emery* v. *Hildreth*, 2 Gray, 228 ; *Crippen* v. *Dexter*, 13 Gray, 330 ; *Fay* v. *Hunt*, 5 Pick. 398 ; *Stevens* v. *Cole*, 7 Cush. 467 ; *Jennison* v. *Hapgood*, 7 Pick. 1 ; *Paine* v. *Stone*, 10 Pick. 75.

AMES, J.   The debt due upon the note from the executor to the estate was assets in his hands, for which he and his sureties were responsible, in like manner as if he had received it from any other debtor of the deceased.   *Stevens* v. *Gaylord*, 11 Mass. 256, 269.   *Leland* v. *Felton*, 1 Allen, 531.   The case finds that in all the proceedings of the executor, in the course of his administration of the estate, no notice was taken of this note.   The amount necessary to be raised by a sale of real estate, in order to make up for the insufficiency of the personal estate to pay the debts and legacies, is computed exactly as if no such note were in existence.   The effect of this mode of proceeding was wrongfully to deprive the devisee of a portion of his inheritance.   At the time of the first petition for leave to sell real estate, the executor owed the estate an amount more than sufficient to pay all the remaining debts represented by him to be due, and there was apparently no necessity for any sale of real estate whatever.   He was guilty, therefore, of a breach of his bond, as in this respect he did not administer according to law and the will of the testator.

The proceedings under the second petition were of the same general character.   There was the same false representation as before of the condition of the estate, and the like suppression of the material fact that there were already personal assets in his hands, unaccounted for, nearly sufficient to pay all the debts and legacies in full, without interfering with the real estate at all.   It is insisted that there was still a deficiency to be made up, but this suggestion, if well founded in fact, does not affect the case. The fact remains that the real estate was incumbered more than it lawfully should have been with the payment of the debts, and the inheritance of the devisee was wrongfully diminished.

Under the license obtained upon this second petition, the executor made an additional sale, and executed and delivered a deed to the purchaser, Morse.   It is said that upon this sale nothing was ever paid to the executor ; that the sale itself was a mere

sham ; that the purpose was to resist or defeat a mortgage made by the devisee, the son of the testator, which was alleged to be without consideration and in fraud of his creditors ; that this purpose was not accomplished; and that the purchaser afterwards bought the mortgage (upon what consideration does not appear) and now claims to have since completed his title under it by foreclosure. All these proceedings occurred after the death of the devisee, and after his title, subject to the mortgage, had descended to his three children and heirs. The sale is described as made for the benefit of those heirs ; but Mary M. Titus (who was one of them, and in whose behalf this suit is brought) did not assent to the transaction, and refused to have anything to do with it.

In such a state of things, the executor, if he were himself a party defendant in this suit, would be estopped to defend himself on the ground that the sale was a sham. *Jennison* v. *Hapgood,* 10 Pick. 77, 100. He would be bound by his representations as to the necessity of making the sale ; and by the fact that he did sell accordingly, and that he made and delivered a deed to the purchaser. Heirs or devisees are not to be prejudiced by his neglect to receive the consideration. He cannot excuse himself, upon such a charge of maladministration, by leaving the injured parties to take the doubtful chance of vacating the sale which was wrongfully made, by a suit at law against the purchaser. So far as it is a question between the executor and the party for whose benefit this suit is brought, she has a right to consider the sale, however wrongfully and improperly made, as a sale in fact, and as a violation of the official bond of the executor, for which he and his sureties are jointly and severally liable. The authorities cited by the defendant as to the conclusiveness of probate decrees do not apply to this case. As there were debts to justify it, the decree licensing the sale of real estate cannot be set aside to the injury of a *bona fide* purchaser ; but the misconduct of the executor in obtaining the decree, and rendering it necessary, is open to investigation in a suit upon his bond.

Upon the facts contained in the report, there can be no doubt that the executor has violated the condition of his bond; that Mary M. Titus is aggrieved by his failure to perform his duty

that the case comes within the provisions of the Gen. Sts. *c.* 101, § 22 ; and that the action is properly brought. *Fay* v. *Taylor*, 2 Gray, 154. *Prescott* v. *Parker*, 14 Mass. 429. We think that the provisions of that section were intended to meet the case of a wrong done, by the executor's maladministration, to any individual interested in the estate, and were not intended to be confined to the case of a general wrong to all persons interested, or to any particular class of persons whose rights have been disregarded. The suit is to be brought upon the representation of any person interested. It may be brought for the general benefit of all parties interested ; but in this case the wrong by which this devisee is aggrieved is the immediate occasion of the suit, and is the only matter for which redress appears to be sought. The damages for the breach set forth will be measured by the injury to her, and cannot form a part of the general assets of the estate, to be administered as such in the probate court. The Gen. Sts. *c.* 101, § 30, provide that if, after judgment rendered, there should be a new breach of the condition, " or if a creditor, next of kin, legatee or other person interested in the estate has a claim for further damages on account of any neglect or maladministration of the executor," a new execution may be issued upon a writ of *scire facias* " in like manner as might have been done in the original suit." These provisions certainly furnish a strong implication that in the original suit such parties may have execution for special damages to their respective particular interests.

Upon the question in whose name, in what manner and for what sum execution should be awarded, there is some obscurity in the statute. Under the St. of 1786, *c.* 55, it was held that after the judge of probate had obtained judgment on the bond for a breach of the condition, the court might award execution to any one who should satisfactorily prove that he was entitled to an indemnity out of the penalty of the bond. Thus in *Paine* v. *Gill*, 13 Mass. 365, where an indefeasible estate in land had been devised, and, by the negligence or wilful refusal of the executor to pay the debts of the testator according to the condition of the bond, the land so devised had been taken by creditors, and the devisee's estate therein was defeated, it was held that he had a

remedy by a suit upon the bond, in which his damages would be ascertained by the court in the usual way. But under the Gen, Sts. *c.* 101, § 28, (which is substantially a reënactment of the Rev. Sts. *c.* 70, § 10,) special provision is made for three classes of cases. First, for the case of creditors whose claims have been ascertained by a judgment or order of distribution; secondly, for that of the distributive share of the next of kin; and thirdly, for that of a breach of the condition of the bond "in not accounting for the estate." In the fourth clause of the section it is provided that "for any other breach of the condition of the bond," execution "shall be awarded without expressing that it is for the use of any particular person, for the full value of all the estate of the deceased that has come to the hands of the executor or administrator, and for which he shall not satisfactorily account, and for all damages occasioned by his neglect or maladministration." The claim that is prosecuted in this case does not come within the description given in either of the first three clauses of the section; and there is some difficulty in applying the fourth clause to the case, inasmuch as the remedy which it affords is apparently intended mainly for cases requiring the removal of an unfaithful executor, and the transfer of all the remaining funds of the estate, together with damages for maladministration, to other hands, for the completion of the administration. See § 29; *Newcomb* v. *Williams*, 9 Met. 525. But it is difficult to see how such proceeding could have any effect to protect the interests or redress the wrongs of a party who has lost the benefit of a special devise of real estate, in consequence of the maladministration of the executor, in the waste or misappropriation of the personal property from which the debts of the testator could and should have been paid.

It is to be observed also that the statute makes no direct provision as to the means of enforcing the payment of a legacy, even in cases where an executor gives bond "for the payment of debts and legacies." It is well settled that such a bond is an admission of sufficient assets for that purpose; *Jones* v. *Richardson*, 5 Met. 247; and that a failure to pay a legacy would be a breach of the bond. In *Fay* v. *Taylor*, 2 Gray, 154, it was held, in a suit upon

such a bond, that execution might issue in favor of the legatee for the amount of the legacy. In *Conant* v. *Stratton*, 107 Mass. 474, execution issued in like manner for the amount of a legacy, although it was not for a specific and definite sum, and the amount could only be made certain by reference to an assessor. In that case, the pleadings only raised the question whether the executor had violated the condition of the bond ; and it was held that under such pleadings the defendant could not, on any other ground, call in question the right to maintain the action for the benefit of the legatee. The provisions of the Revised Statutes, re-ënacted in the Gen. Sts. *c.* 101, §§ 28, 29, do not essentially alter the rules established by the former statutes, but render them in some respects more definite and precise. *Barton* v. *White*, 21 Pick. 58. In *Prescott* v. *Pitts*, 9 Mass. 376, the neglect of an executor to sell real estate in order to raise a fund for the payment of an annuity to the testator's widow, according to the direction of the will, was held to be a maladministration, for which an action might be maintained on his official bond for her benefit, and execution was awarded for her damages. In *Brazer* v. *Clark*, 5 Pick. 96, and *Dawes* v. *Winship*, Ib. 97 note, it was held that a suit on the bond could be maintained against an executor, for the benefit of heirs, for waste in suffering property to be sold at a disadvantage and loss, on an execution.

We have then a case in which the executor has plainly violated the condition of his official bond, and has been guilty of unfaithful administration. The defendant was a surety for the executor, and responsible for his faithful performance of his duties as such. The party for whose benefit this suit is brought has suffered a loss which is the direct result of this unfaithfulness on the part of the executor. Her only effectual remedy is to be obtained by a suit upon the bond in the name of the judge of probate, for her benefit. We are of opinion that the suit can well be maintained, that judgment must be rendered for the penalty of the bond, and that execution must issue for the amount of damage which she has sustained, to be determined by an assessor, who is to ascertain and report to the court the value of her interest in the estate sold, at the time of the sale, and in the condition in which it then was.