HOLDEN, Appellant, vs. CURRY and others, Respondents.

*May 23 — June 21, 1893.*

(1, 2). *Guardians: Date of appointment: Evidence: Validation of prior acts.* (3) *Estates of decedents: Judgment charging administrator: Sureties.*

1. Parol evidence is not admissible to show an oral appointment of a guardian and approval of his bond prior to the date of the appointment and approval as shown by the record.

2. The appointment of a guardian cannot relate back so as to validate his prior acts in respect to the property and estate of the ward.

3. A judgment of the county court, upon settlement of the final account of an administrator *de bonis non,* charging him with a certain sum, is conclusive as against the sureties on his bond.

APPEAL from the Circuit Court for *Iowa* County.

This action was brought against the defendants as sureties on the bond of one Parmalee as administrator *de bonis non* of the estate of Martin Phelan, deceased, to recover the sum of one twenty-fifth part of $7,530.10, being the sum of $301.20, ordered by the county court to be paid to the plaintiff as one of the distributees and of kin to the deceased, November 11, 1884. Martin Phelan died intestate, leaving as his heirs at law his brothers, Joseph Phelan, Richard Phelan, and James Phelan, and Julia Phelan, a niece, each entitled to one fifth of his estate, and five nephews and nieces entitled to another fifth, or one twenty-fifth each, and the plaintiff was one of the latter number. William T. Henry was appointed administrator of his estate, partly administered the estate, and died July 2, 1883. The said Parmalee was appointed administrator *de bonis non* October 2, 1883, the defendants becoming sureties on his bond as such.

The account of Henry as such administrator, and also the account of Parmalee as administrator *de bonis non,* were filed for settlement, and an application for assignment of the

residue of the estate was heard upon notice; and a decree was made thereon November 11, 1884, from which it appeared that the residue in the hands of Henry at the time of his death was $12,785.85, and that said Parmalee was chargeable, as administrator *de bonis non*, with that sum, and that the residue in his hands was $7,530.49, one twenty-fifth part of which was assigned to the plaintiff, who with her brother Joseph and her sister Johanna were each entitled to a like amount, and were then minors.   Joseph Phelan, one of the brothers of the deceased, entitled to one fifth, or $1,503.50, had been paid by Henry, as administrator, $2,500, for which he held his receipt, being a sum in excess of his share, of $996.50, and this receipt was handed over to Parmalee as administrator *de bonis non*, and appears to have been received by him as an asset of the estate, and he was charged by the county court therewith in his final account.   On the 14th of November, 1884, Richard Phelan, one of the brothers of the deceased, gave to Parmalee a receipt stating that he had received of the latter, "as administrator *de bonis non* of the estate of Martin Phelan, deceased, the sum of $1,503.50, it being the full share of said estate in its final distribution coming to me as per final judgment in the settlement of said estate." This appears to have been for the amount required to be paid under the judgment to the three minors last above named.   The evidence shows that it was then intended to have said Richard Phelan appointed their guardian, so as to complete the distribution thus adjudged.   On the 17th day of the same month, Parmalee gave an order to said Richard Phelan, directed to the brother Joseph Phelan, who had received $996.50 more than his share, saying to him that "Richard having assumed the said sum of $996.50 in his hands, over and above his said share, that he should settle with him for that amount."   On the 24th day of the same month, Richard Phelan, as guardian of the plaintiff, gave

a receipt to said Parmalee, as administrator *de bonis non*, for the sum of $300.70; "being for the full share of said estate in its final distribution coming to her as per final judgment in the settlement of said estate." Richard Phelan, assuming to be guardian for said three minors, had taken of Parmalee said order on Joseph Phelan for the amount of their three shares, and for another small sum due to another distributee, and the question was whether this transaction was a valid payment and satisfaction of the share sued for by the plaintiff; it being denied that Richard Phelan was such guardian of the plaintiff as he assumed to be, or that he had any authority, as guardian or otherwise, to receive said order of Parmalee on Joseph Phelan in payment of the amount adjudged to be paid her by Parmalee as administrator *de bonis non*.

After Parmalee's death, by order of the court, the plaintiff having demanded said sum of $301.20 of Parmalee's sureties, she obtained leave to sue on his bond for the amount. There was no claim that she had been paid in any other way than by the receipt by her guardian as above of the order on Joseph Phelan. It appeared that this order was never paid, and Joseph Phelan refused to accept it. On the same day when Richard Phelan gave Parmalee the first receipt, as above stated, November 14, 1884, he filed his petition to be appointed as guardian of said three minor heirs; and evidence, against plaintiff's objection, was given to show that at the same time he tendered to and left with the county judge his bond, with sureties, bearing the same date, but the bond was not filed until the 12th of January next thereafter, when Richard Phelan was appointed such guardian and letters were issued to him bearing that date; that when said petition and bond were so presented the county judge said that they were right and he was appointed guardian. Evidence was given to show that Richard Phelan agreed to accept, and did accept, the order of

Parmalee on Joseph Phelan in payment of their distributive shares, but this was before the appointment was actually made; that since then nothing had occurred or been done about it. It appeared that Joseph Phelan and Richard Phelan had real estate for some considerable time thereafter in Iowa county, upon which they received rents; that it had been subsequently sold and disposed of. It was not claimed that Parmalee had been notified of the nonpayment of his order on Joseph Phelan.

The defendants offered to prove that Henry, while acting as administrator, received all the property of the Phelan estate, except the sum of $50 received by Parmalee; that the latter, owing to his relations with Mr. Henry, but not because he was legally bound to do so, assumed to pay the amount that appeared to be due from Henry in the settlement of his account, although he did not actually receive the assets belonging to the estate, except said $50; and that therefore the sureties were only bound for the latter amount. This evidence was excluded.

At the request of the plaintiff's counsel the court charged the jury that the order given by Parmalee to Richard Phelan on Joseph Phelan, if not itself paid, did not constitute a payment of the amount due to the plaintiff on the settlement of Martin Phelan's estate, unless received by Richard Phelan under an express agreement to accept it as absolute payment; but refused to instruct the jury that Richard Phelan, as guardian of the plaintiff, had no right to accept of an order on Joseph Phelan as payment of the amount due his ward, unless the same was authorized by the plaintiff or subsequently ratified by her, and that such assent or ratification could only be made after she became of age; and also refused to direct the jury to return a verdict in favor of the plaintiff for the sum of $301.21, with interest. The court stated that the question to be determined was whether the $300.70, for which the receipt in

Holden vs. Curry and others.

evidence was given, should be charged to her because paid to one who acted as her agent and really was her guardian some few weeks afterwards and continued to be such until she became of age; that the question to be determined was, viewing all the circumstances in the case when this matter was adjusted between Mr. Parmalee and Richard Phelan, did the latter receive this order for $996.50 upon his brother Joseph Phelan, in New York, as an absolute payment of the amount due to his wards? Did he receive it with the purpose and expectation of looking to his brother Joseph, and to him wholly and only, for the payment of this sum? If he did, the plaintiff could not recover. If he did not, then their verdict should be in favor of the plaintiff, for the amount claimed, and interest from November 11, 1884. Referring to the fact that Joseph Phelan had property in Wisconsin, the court told the jury that there was "no question but what Richard Phelan could have brought an action against him in the courts of this state, and compelled the payment of the amount of the order to him as the guardian of his wards, but he did not see proper to take that course. Now the land is gone, the personal property is gone, and this claim is presented to the court as a claim that should be paid by the sureties of Mr. Parmalee,"— and that the jury were to decide whether it should be or not.

The jury found for the defendants, and a motion for a new trial was made on the ground of the admission of improper evidence objected to by the plaintiff, for the refusal of instructions asked, and for error in the instructions given, and because the verdict is contrary to law and contrary to the evidence. The motion was denied, and the plaintiff appealed from the judgment against her for costs.

For the appellant there was a brief by *Aldro Jenks* and *Olin & Butler*, and oral argument by *Eldon J. Cassoday* and *John M. Olin*. They argued, among other things, that it was error to admit testimony to show tl at Richard

---

Holden vs. Curry and others.

---

Phelan was appointed guardian of the plaintiff at a date prior to that shown by the record. *Cassiday v. Millerick*, 52 Wis. 379; *Jochumsen v. Suffolk Bank*, 3 Allen, 87; *Mutual Ben. L. Ins. Co. v. Tisdale*, 91 U. S. 238; *Emery v. Hildreth*, 2 Gray, 228; *Consolidated Coal Co. v. Shaefer*, 135 Ill. 210; *Weaver v. Lammon*, 62 Mich. 366; *Stevenson v. Flournoy*, 89 Ky. 561; *Spencer v. Credle*, 102 N. C. 68; *Comm. v. Intoxicating Liquors*, 135 Mass. 519; *Comm. v. Hassenger*, 105 Mass. 385; *Barker v. Barker*, 14 Wis. 131; *Lyle v. Williams*, 65 id. 231; Freeman, Judgm. § 275; 1 Greenl. Evi. § 550; *Leigh v. Arnold*, 5 Cush. 615; *Hiles v. Cate*, 75 Wis. 91; *Cushenberry v. McMurray*, 27 Kan. 328; *Winchester v. Thayer*, 129 Mass. 129.   Acts done by a person prior to his appointment as guardian do not bind the estate of the ward. *Wiswell v. Wiswell*, 35 Minn. 371; *Huntsman v. Fish*, 36 id. 148; *Wuesthoff v. Germania Life Ins. Co.* 107 N. Y. 580; *Sherman v. Wright*, 49 id. 227; *Jochumsen v. Suffolk Bank*, 3 Allen, 87.   When an executor or administrator pays money due to the heirs to a person not authorized to receive it, it is no bar to a suit by the heirs against the executor or administrator for that sum. 2 Woerner, Admin. 1011, § 640; *Jochumsen v. Suffolk Bank*, 3 Allen, 87; *Wuesthoff v. Germania Life Ins. Co.* 107 N. Y. 580.

For the respondents there were briefs by *J. M. Smith*, attorney, and *Spensley & McIlhon*, of counsel, and oral argument by *Calvert Spensley*. They contended, *inter alia*, that if Richard Phelan was not legally appointed guardian when he gave the receipt to Parmalee, the receipt was one which it was proper for a guardian to give, and when the letters were issued afterwards the appointment related back so as to cover the giving of the receipt. *Graysbrook v. Fox*, 1 Plowd. 282; *Thompson v. Harding*, 20 Eng. L. & Eq. 145; 1 Woerner, Admin. secs. 173, 196; Schouler, Executors, secs. 194, 195.

PINNEY, J.  Unless the plaintiff is concluded by the action of Richard Phelan in agreeing to accept, and in accepting, the order of Parmalee on Joseph Phelan for $996.50 in payment and satisfaction of the distributive shares of the three minors, the plaintiff and her brother and her sister, in the estate of Martin Phelan, deceased, it is plain that the defendants had no defense to the action, and the circuit court should have instructed the jury, as requested by the plaintiff, to find a verdict in favor of the plaintiff for the full amount of her claim.  The uncontroverted evidence shows that when the transaction between Parmalee and Richard Phelan relied on as a defense took place, the latter was not the lawfully appointed guardian of the plaintiff or of her brother or sister, for all of whom he assumed to act.  He was not their agent, because by reason of their infancy they were not competent in law to appoint an agent.  There is no evidence to show that after the appointment of Richard Phelan as their guardian, January 12, 1885, they ever in any way ratified or confirmed what he had previously attempted to do in their behalf, nor that he assumed in any way to negotiate or deal with Parmalee in respect to the order.

1. A guardian of a minor derives his authority entirely from the act of the court appointing him such, and this must be evidenced by matter of record — by the record of the court.  The appointment cannot be shown in part by the record and in part by matter *in pais;* and of necessity the record itself is the sole and conclusive evidence of the fact, and cannot be contradicted or varied by parol evidence. It imports absolute verity, and no allegation can be admitted against it.  The statute provides that, "before appointing any person guardian of a minor, the court shall require such person to give bond to the minor, in such sum and with such sureties as the court shall designate and approve, con-

ditioned " as in the statute prescribed.   S. & B. Ann. Stats. sec. 3966.   And by sec. 4013 it is provided that "no such bond shall be deemed sufficient unless it shall have been examined and approved by the county judge, and his approval indorsed thereon in writing and signed by him."   All the prescribed conditions of the bond are prospective, and none of them have any relation to what has occurred in the past.   The bond is therefore no protection or security to the ward for any interference or intermeddling with his property by his guardian before he was appointed such.   The evidence that the county judge verbally announced his satisfaction with Richard Phelan's bond, and that he was appointed guardian of these minors, was improperly received to vary and contradict the record.   It was not competent by such means to carry back the authority conferred on the guardian by an appointment which the record declares was made January 12, 1885, in pursuance of a bond filed and approved on the same day, to sanction acts and transactions of the guardian occurring in the previous November, when he was not their guardian, and for the doing of which improperly the bond actually given afforded them no security whatever.

2. The appointment of Richard Phelan as guardian, January 12, 1885, could not relate back so as to validate acts done by him in relation to the property and estate of his wards previous to such appointment, and when he had no authority over it.   *Huntsman v. Fish,* 36 Minn. 148; *Wiswell v. Wiswell,* 35 Minn. 371.   The fraudulent or mistaken representations, even, of one who without authority assumes to act as guardian for an infant, afford no foundation for an equitable estoppel against the infant or his guardian subsequently appointed, so as to bind the infant or charge his property.   *Sherman v. Wright,* 49 N. Y. 228.   And if the same party is appointed guardian his rights and author-

Holden vs. Curry and others.

ity as such are the same as of one appointed who had made no such representations. The case of one acting as guardian for an infant without authority is not analogous to that of an executor *de son tort*, or of acts done by an executor or administrator before letters are issued to him, as no one can make himself guardian for any purpose by wrongfully intermeddling with the property or affairs of an infant. The doctrine of relation is an equitable one and applies in order to support a just title, as where the proceedings necessary to vest or create it consist of several steps or acts all of them will have reference in point of time to the principal or substantial part of the transaction. It will not be applied so as to work wrong or injustice. As the transaction by which it is claimed Richard Phelan agreed to take or did take the order of Parmalee on Joseph Phelan in payment of the distributive share of the plaintiff in Martin Phelan's estate, with which Parmalee was charged by the judgment of the county court, was without any authority and void as against her, it was a matter of no concern to her what became of the property or estate in Wisconsin of either Richard or Joseph Phelan, and the circuit court erred in leaving it to the jury to find whether the plaintiff's claim should be paid by the defendants or not. Upon the plain and undisputed facts the plaintiff was entitled to recover her demand, with interest. It was immaterial that Richard Phelan agreed, if such was the fact, before he became guardian, to take, and had in fact taken, the order in question as payment.

3. The offer of the defendants to show that Parmalee never received in fact but $50 of the property and estate of Martin Phelan, deceased, was inadmissible. The circuit court properly held that the judgment of the county court, charging Parmalee as administrator *de bonis non*, as already stated, was in this action conclusive as against his

sureties. *Heard v. Lodge,* 20 Pick. 58. This is the necessary result of the conditions of the bond.

For the reasons stated the judgment of the circuit court must be reversed and a new trial had.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.