WILLIAM G. BASSETT, Judge of Probate, *vs.* FIDELITY AND
DEPOSIT COMPANY OF MARYLAND.

Hampshire.    September 15, 1903. — October 20, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Executor.    Surety.    Bond.*

The surety on an executor's bond is liable for the full amount due the testator
from an insolvent firm of which the executor was a member, although the firm
and the executor were insolvent at the time of the testator's death.

If a debt from an executor to his testator is due on demand, the executor cannot
set up that no such demand was made or that he could not make a demand on
himself.

In an action on an executor's bond, where it appears that the executor is charge-
able with funds in his hands for which he negligently has failed to account, to
an amount in excess of the penal sum of the bond, he and his sureties are liable
for the penal sum of the bond with interest from at least the date of the writ.

CONTRACT in the name of the Judge of Probate for Hampshire
County against the surety on the bond of William B. and Ed-
mund H. Sawyer, as executors under the will of Sarah J. Sawyer.
Writ dated January 18, 1902.

At the trial in the Superior Court before *Maynard, J.,* it ap-
peared that William B. and Edmund H. Sawyer were appointed
executors under the will of Sarah J. Sawyer on December 8,
1898, and resigned their trust on October 2, 1900. They were
succeeded by George L. Loomis, and upon his death Carlos C.
Tracey was appointed administrator *de bonis non* with the will
annexed and was the administrator for whose benefit this action
was brought.

It was admitted that a technical breach of the bond had
occurred by reason of the failure of the executors to file any
account. Accordingly judgment was entered for $25,000, the
penal sum of the bond, and the case was referred to an assessor
to determine for what amount execution should issue.

It appeared in evidence that Edmund H. Sawyer, one of the
executors of the will of Sarah J. Sawyer, formed a partnership
with one Wolf in 1894, which continued until early in 1900.

The defendant contended that on all the evidence it appeared that an agreement existed between Edmund H. Sawyer and his mother, the testatrix, that certain sums advanced by her were to be at the risk of the business of Sawyer and Wolf and were not an indebtedness of Sawyer and Wolf or Edmund H. Sawyer to the testatrix. The defendant further contended that on all the evidence it appeared that the firm and its members were insolvent at the time of the death of the testatrix, and asked the assessor to rule that if the executor was insolvent and unable to pay any indebtedness to the estate, the surety could not be charged. The assessor refused so to rule and charged the defendant with $22,697.19 under specification 2 (being the items of the inventory marked " notes of Sawyer & Wolf $18,453," with interest) and with $4,389 under specification 19 (being the item of the inventory marked " 39 shares Glendale Elastic Fabrics Co.," with interest), a total of $27,087.19. This amount being in excess of the penal sum of the bond, the assessor charged the defendant with the amount of the penalty of the bond, $25,000, with interest thereon from the date of the writ.

At the request of both parties the evidence was reported in full by the assessor and made a part of his report. The report and evidence were made a part of the bill of exceptions.

The defendant filed certain objections and exceptions to the assessor's report. Upon the filing of the assessor's report the defendant moved that the report be recommitted for the purpose of taking further evidence of the insolvency of Sawyer and Wolf and Edmund H. Sawyer during the term of his executorship. The judge denied the motion, on the sole ground that as matter of law the insolvency of the executor or executors was immaterial to the issue. To this ruling the defendant excepted. The judge overruled the defendant's exceptions to the assessor's report, and ordered that execution issue upon the full amount of judgment and interest thereon from the date of the rendition thereof. The defendant alleged exceptions.

*E. K. Arnold,* for the defendant.

*J. C. Hammond,* (*H. P. Field* with him,) for the plaintiff.

LORING, J. The principal exception of the defendant corporation is to the refusal of the judge to recommit the case to the assessor to take evidence as to the insolvency of the executor,

and of the firm of which he was a member at the date of the testatrix's decease.

The contention which has been made in support of this exception is that the obligation of a surety on an executor's bond goes no farther than to guarantee that the executor will lawfully administer the assets of the testatrix which had an existence in fact and which came to his hands or knowledge, and that it is beyond the scope of such a bond to create assets which the testatrix never had by making the surety guarantee debts due from insolvent debtors; and for that reason it cannot be made liable for the full amount of the notes held by the testatrix made by the executor's insolvent firm.

But there is another side to the case. An executor or administrator is appointed for the sole purpose of enforcing in behalf of those interested in the estate the rights of the estate against others. When the estate has a claim against the executor or administrator himself, he is incapacitated from performing that duty and taking to himself that office. For that reason, on broad principles of policy it was laid down by the common law of England that he must yield all controversy as to the debt due from himself and treat it as an asset of the estate. No one is bound to accept the office, and if he elects to do so he thereby tacitly assents to this condition.

The common law did not allow him to accept the office and keep his rights in a controversy when his duty and his personal interest were in a direct conflict. To allow him to accept the office and then to settle the amount which the creditors and others interested in the estate would have got had he not taken the office but had allowed some disinterested person to be appointed to enforce these rights would not be doing justice to those whose rights the law undertakes to preserve. Take the case at bar as an example. The executor's firm was going on with its business when the testatrix died, and went on in business for some fourteen months after that time. The law could hardly be said to have fully preserved the rights of those interested in the estate if it allowed this creditor of the estate to accept an office where it became his duty to collect the amount due from his own firm by pressing for payment and after fourteen months of inaction on his part to settle the rights of the

beneficiaries by a judicial inquiry as to what would have happened had a disinterested person been appointed to perform the duty owed to these beneficiaries.

But it is not necessary to discuss the question further.  It is concluded by authority in this Commonwealth.  The rule was originally laid down in 1814, in *Stevens* v. *Gaylord*, 11 Mass. 256. The history of the rule and the cases, both in England and in this country, are given in *Winship* v. *Bass*, 12 Mass. 199, and in *Tarbell* v. *Jewett*, 129 Mass. 457.  The rule is one of general application and has been held to be applicable not only in case of executors and administrators, but also in case of assignees in insolvency, *Benchley* v. *Chapin*, 10 Cush. 173, guardians, *Mattoon* v. *Cowing*, 13 Gray, 387, and receivers appointed to wind up insolvent corporations.   *Commonwealth* v. *Gould*, 118 Mass. 300. It has been recognized and applied in the following cases in addition to those cited above: *Hobart* v. *Stone*, 10 Pick. 215; *Kinney* v. *Ensign*, 18 Pick. 232; *Ipswich Manuf. Co.* v. *Story*, 5 Met. 310; *Sigourney* v. *Wetherell*, 6- Met. 553; *Willey* v. *Thompson*, 9 Met. 329; *Chenery* v. *Davis*, 16 Gray, 89; *Leland* v. *Felton*, 1 Allen, 531; *Chapin* v. *Waters*, 110 Mass. 195; *Hazelton* v. *Valentine*, 113 Mass. 472; *Choate* v. *Arrington*, 116 Mass. 552; *Pettee* v. *Peppard*, 120 Mass. 522; *Martin* v. *Smith*, 124 Mass. 111; *Choate* v. *Thorndike*, 138 Mass. 371; *Stetson* v. *Moulton*, 140 Mass. 597.

And, finally, it was held in *Leland* v. *Felton*, 1 Allen, 531, that an executor should be charged with the full amount of notes belonging to the testator made by a firm of which he was a partner, although it was insolvent when the testator died, as well as with the full amount due on notes made by himself, who also was insolvent at that time.

The defendant in the case at bar asks us to hold that although an insolvent executor is to be charged with the debt due from him the sureties on his bond are not to be held liable therefor. But that is out of the question.   That contention flies directly in the face of the elementary principles governing the effect of a decree allowing a probate account, and the elementary principles as to the obligation of a surety on a probate bond.

In the first place, a decree of a Probate Court allowing an account of an executor or other official is binding on all inter-

ested in the estate including sureties on the bond of the account-
ant.  If there is error, the error must be corrected in the Probate
Court, as it may be if there was fraud or if the party in question
had not such notice as to be concluded by the decree.  *Jennison*
v. *Hapgood*, 7 Pick. 1.  *Sever* v. *Russell*, 4 Cush. 513.  *Parcher*
v. *Bussell*, 11 Cush. 107.  It is settled that a surety on a probate
bond is a party interested in the accounts of the principal, and
for that reason has a right of appeal to the Supreme Judicial
Court.  *Farrar* v. *Parker*, 3 Allen, 556.

In the second place the obligation of a surety on a probate
bond is the obligation of the principal.  The bond is a joint
bond and the judgment necessarily must be the same against
both.  This is more than a technical rule of law, it is an in-
stance where the true character of a surety's liability comes to
the surface.  The ground on which it was held that a surety has
a right of appeal in such a case was that the decree settling the
account of the principal " if once properly established, fixes the
amount of liability of the sureties on their bond."  *Farrar* v.
*Parker*, 3 Allen, 556, 558.    And Endicott, J., in *Tarbell*
v. *Jewett*, 129 Mass. 457, 468, speaking of *Leland* v. *Felton*,
1 Allen, 531, said that it was held that the executor would be
charged for his own notes and for the notes of his firm held
by the testator, although both he and the firm were insolvent,
" which of course rendered his sureties liable."    Again, in
*Choate* v. *Arrington*, 116 Mass. 552, 556, Wells, J. said : " The
surety is liable for whatever is properly chargeable to his prin-
cipal in the official capacity on account of which the bond was
given."    To the same effect see Ames, J. in *Chapin* v. *Waters*,
110 Mass. 195, 197.

It is apparent that this was assumed to be the case in *Leland*
v. *Felton*, 1 Allen, 531.  In that case the executor had resigned
and the plaintiff Leland had been appointed administrator with
the will annexed *de bonis non*.  The main contention of the
defendant Felton (the executor who had resigned) was that the
debt due the testator was suspended, not extinguished, by his
being executor, that it was revived by his resignation and that
the remedy of the administrator was an action on the notes
against him and his partners in which he could recover a per-
sonal judgment, but that he could not be charged with the

amount by the Probate Court in his executor's account. If the liability of the surety was different from that of the executor, there was no possible object in this defence. The sole purpose of the defence was to protect the sureties, and from an examination of the court records it appears that after the decision in *Leland* v. *Felton*, judgment was recovered in an action brought against the principal and sureties in the Supreme Judicial Court, in the October Term, 1863, no defence being interposed by the sureties. It further appears from an inspection of the records of the Probate Court that several payments were made on account of that judgment by one of the sureties.

The defendant's request, therefore, is a request that we overrule the case of *Leland* v. *Felton*, 1 Allen, 531. But after a careful consideration of *Baucus* v. *Stover*, 89 N. Y. 1, *Baucus* v. *Barr*, 45 Hun, 582, affirmed in 107 N. Y. 624, *Lyon* v. *Osgood*, 58 Vt. 707, *Garber* v. *Commonwealth*, 7 Penn. St. 265, *McCarty* v. *Frazer*, 62 Mo. 263, *State* v. *Gregory*, 119 Ind. 503, 509, *Harker* v. *Irick*, 2 Stockton, 269, *Spurlock* v. *Earles*, 8 Baxter, 437, cited and relied on by the defendant, we are of opinion that for the reasons given the true rule was laid down in *Leland* v. *Felton*, and that it is now too late to question the practice which was then adopted and has been in force for over forty years.

There is nothing in the other points taken by the defendant in defending its liability. There was evidence which warranted the finding made by the assessor that the sums advanced by the testatrix resulted in a debt due to her, the time for payment of which had arrived. Even if a demand had been necessary, the defendant cannot set up that no demand was made, as he seeks to do. It was his duty as executor to make a demand and he could not set up that he could not make a demand on himself. See *Stevens* v. *Gaylord*, 11 Mass. 256, 270, where Jackson, J. says: "In the case of his own debt, which he admits to be due, it is obvious that he can never prove a demand and refusal."

In the case at bar there was a breach of the bond in failing to account, an agreement for judgment in favor of the plaintiff, and the case was sent to an assessor to fix the amount for which execution should issue. He charged the executor with interest on the demand notes of his firm amounting to $18,453, and with interest on $3,500, the value of the Glendale stock, with annual

rests at six per cent, to the date of his report; and as this sum exceeded the penal sum of the bond he reported that execution should issue for the penal sum of the bond with interest from the date of the writ. The Superior Court directed that execution should issue for the full amount of judgment and interest from the date of the rendition thereof.

The defendant contends that in contemplation of law these two sums have been in the hands of the executor since the death of the testatrix, and that on the authority of *Wyman* v. *Hubbard*, 13 Mass. 232, *Stearns* v. *Brown*, 1 Pick. 530, *Boynton* v. *Dyer*, 18 Pick. 1, 7, an executor is not chargeable with interest on funds, in his hands. But the rule laid down in the last of those cases is that an executor is not chargeable with interest " except where they actually receive it or make some profitable use of the funds, or are guilty of negligence in accounting for them." This defendant was guilty of negligence in not accounting for these two amounts.

It appears that the parties made an agreement that judgment might be entered for the penal sum of the bond, but it would seem from the record before us that no judgment has in fact been entered. The plaintiff is at least entitled to judgment for interest on the penal sum of the bond from the date of the writ, *Harris* v. *Clap*, 1 Mass. 308, *Pitts* v. *Tilden*, 2 Mass. 118, *Warner* v. *Thurlo*, 15 Mass. 154, *Bank of Brighton* v. *Smith*, 12 Allen, 243, and the amount of that judgment bears interest. We understand that the Superior Court's order was intended to be made in conformity with this. On a judgment being entered *nunc pro tunc*, execution may issue as ordered by the Superior Court.

*Exceptions overruled.*