ROLLIN E. HARMON, Judge of Probate, *vs.* HENRY E. WESTON & another.

AMERICAN SURETY COMPANY OF NEW YORK *vs.* ROLLIN E. HARMON, Judge of Probate, & others.

Essex. March 19, 20, 1913. — June 17, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Bond,* Of trustee. *Trust,* Action on bond of trustee. *Surety. Subrogation. Equity Jurisdiction,* Avoiding circuity of action, Subrogation. *Power. Interest.*

Under Pub. Sts. c. 143, §§ 18, 20, cl. 3 (now R. L. c. 149, §§ 29, 31), where a judgment is obtained in an action against the surety on the probate bond of a trustee, execution must issue, without expressing that it is for the use of any person, for the full amount of all the estate of the testator which came to the hands of the trustee for which he did not satisfactorily account either in the Probate Court or by payments made directly to or for the benefit of the parties entitled thereto.

The surety on a probate bond is liable jointly with his principal; and, if in an action on the bond no service has been made on the principal and he has not appeared, this does not affect the liability of the surety, who is liable for the default of the principal to the full extent of that default not exceeding the amount of the judgment for the penal sum of the bond.

In action on a probate bond, given by one of two trustees, in which judgment had been obtained against the defendant surety, it appeared that the two persons who were the trustees were entitled to the whole income of the trust during their lives, that the defendant trustee misappropriated a part of the principal of the fund and that this misappropriation was at least in part made possible by the negligence of his cotrustee, that at the time the bond and a similar bond of the cotrustee were given the trustees also executed an agreement with the surety by which they jointly covenanted to indemnify the surety for all liabilities incurred upon the bonds and that the surety at its option should be subrogated to all the rights of the principals. When the action was brought the defendant trustee had disappeared and his cotrustee had died. *Held,* that the surety was subrogated to the rights of the two principals to receive the income from the entire trust fund for the period between the time of the misappropriation and the time of the death of the cotrustee, and that, therefore, to avoid circuity of action, the income of the part of the trust fund that had been misappropriated would be regarded as fully accounted for by the

trustees, and was not to be included in the amount for which execution was to issue.

In an action on a probate bond given by one of two trustees, in which judgment had been obtained against the defendant surety, it appeared that the two persons who were the trustees were to receive in equal shares the income of the trust fund during their lives, and that on the death of either of them the half of the fund of which he received the income was to be paid to his issue, if any, and in default of issue, to whomsoever he might by will appoint, or in default of appointment to the heirs of the testator, that the defendant trustee misappropriated a part of the principal of the fund and that this misappropriation was made possible by the negligence of the other trustee, that the defendant trustee was living, and that his cotrustee had died, leaving no issue, and by will had appointed one half of the trust fund to a certain person, who was one of his creditors. It was contended by the defendant surety that it was subrogated to the rights of the deceased trustee and that such subrogation included the property received by the appointee under the exercise of the power of appointment by such deceased trustee. *Held*, that the deceased trustee, who was the donee of the power, had himself no interest in any part of the principal of the fund, the property having come to the appointee from the donor through the exercise of the power, so that subrogation to the rights of the deceased trustee could not include any part of the principal of the fund, and that it was not necessary to consider what questions would have arisen if the deceased trustee had failed to exercise the power of appointment.

Where, in an action on a probate bond, judgment is entered for the penal sum of the bond with interest thereon, if the amount for which execution properly should issue exceeds such penal sum, the allowance of interest is correct as compensation for the wrongful detention of the money; and, even if the amount for which execution is to issue does not exceed such penal sum, it cannot be said that the defendant is harmed by the allowance of interest in the entry of judgment, for he can be held only for the amount for which execution is to issue.

A suit in equity by the surety on a probate bond, given by a trustee who was entitled to share as beneficiary in the income of the trust fund and who misappropriated a part of such trust fund, for the appointment of a receiver to hold the interest of such defaulting trustee, to which the plaintiff claims to be subrogated so far as the amount of such interest has been made good by the plaintiff as the surety on his bond, with directions to account to the plaintiff for the income during the lifetime of such defaulting trustee and on his death to pay to the plaintiff any part of the principal of the trust fund to which such defaulting trustee may be entitled, cannot be maintained, where such defaulting trustee has no interest in the principal of such trust fund but only a contingent power of testamentary appointment over a share of the fund in case he dies without issue and it cannot be determined until after his death who will become entitled to the share.

SHELDON, J. The first of these cases is an action upon the bond given to the Judge of Probate by the first named defendant as one of the trustees under the will of Nathaniel Weston, with the other defendant the American Surety Company (hereinafter called the company) as surety. There was a breach of the bond,

and judgment has been entered against the defendants for the penal sum of the bond, with interest from the date of the writ. The case was referred to an assessor to determine the amount for which execution should issue; his report has been made, and the facts therein stated have been found to be true; and the case comes to us upon a report from the judge of the Superior Court.*

Henry E. Weston and his brother William H. Weston were duly appointed and became trustees of the fund in question, then amounting to about $150,000. By the will of Nathaniel Weston, the testator who created the trust, the income of the fund was to be paid to his nephews Edward S. Weston, Henry E. Weston, William H. Weston and Lawrence W. Jenkins, during their lives. On the death of each nephew the share of the principal of which he received the income was to be paid "to his issue if any, and in default of issue, to whomsoever he may by will devise and bequeath the same, or order it to be paid over to. And in default of issue and a testamentary disposal of the same, to my [the testator's] heirs at law." By a codicil to his will, the testator provided as follows: "I revoke so much of my will as relates to my nephew Lawrence W. Jenkins and make no provision for him."

Edward S. Weston died in 1882; the share of the trust fund of which he had the income has been properly disposed of; and no question arises in reference thereto.

Henry E. Weston had a power of attorney from his brother William, and had the active management of the trust, though William signed some papers with him, and was aware of some parts of his conduct. He never filed any account in the Probate Court. He misappropriated much of the income and about $123,000 of the principal of the trust fund. In 1902 he was removed by the Probate Court from his position as trustee. His cotrustee, William H. Weston, died on May 21, 1905, leaving no

---

* *Hitchcock* J. The writ was dated February 18, 1904. The assessor was James D. Colt, Esquire. Henry E. Weston was removed as trustee on December 22, 1902. This action on his bond was brought in the name of the judge of probate for the benefit of W. C. Cogswell and William H. Weston, trustees, and for William H. Weston personally. William H. Weston died on May 21, 1905, leaving no issue, and leaving a will by which he exercised a power of appointment, as described in the opinion, in favor of one Pratt, a creditor.

issue.   Walter C. Cogswell has been appointed trustee of the fund by the Probate Court, and now holds that office.

The two trustees, Henry and William, on their appointment in 1896 gave separate bonds, each in the sum of $150,000, to the Judge of Probate, but each with the same surety, the company. They gave at the same time their joint written agreement, under seal, to the company, whereby, in consideration of the company's having become surety upon the two bonds mentioned, they agreed, among other things, that they would at all times indemnify and save the company harmless from all damages, liabilities and expenses whatever; that the company should at its option have and be entitled to exercise in their names or otherwise all their rights, remedies and privileges in the premises; that nothing in the agreement nor any act of theirs in the premises should operate to abridge, defer or limit the right of the company to become subrogated to all rights or remedies, or to limit or abridge or in any way interfere with any rights, remedies or privileges, whether by subrogation or otherwise, of the company; and that the right of the company to subrogation was affirmed and extended to all their rights and privileges in the premises.

The plaintiff now contends that execution should issue for the full amount of the deficiencies in the principal of the fund, with interest on the different items thereof from the respective dates of their conversion, and for the income not paid to William or to William's assignee with interest thereon, up to the limit of the amount of the judgment with interest thereon.   Only the company defends the suit; and its contentions will be dealt with hereafter.

By the terms of the statute in force both when this bond was given and now, the proceedings herein are to be "conducted in like manner as is provided [by statute] relative to actions on bonds given by executors and administrators."   Pub. Sts. c. 143, § 18. R. L. c. 149, § 29.   Those provisions applicable to this case are found in the third clause of Pub. Sts. c. 143, § 20, and R. L. c. 149, § 31, that "if the action is brought for a breach of the condition in not accounting for the estate as required by law, execution shall be awarded, without expressing that it is for the use of any person, for the full value of all the estate of the deceased that has come to the hands of the executor or administrator, and for

which he does not satisfactorily account." In our opinion, that is the rule to be followed in this action. *Conant* v. *Kendall,* 21 Pick. 36. *Newcomb* v. *Williams,* 9 Met. 525. *Winslow* v. *Otis,* 5 Gray, 360, 363. *Choate* v. *Arrington,* 116 Mass. 552. The remedy given by R. L. c. 162, § 38, as amended by St. 1907, c. 129, is cumulative; it gives an additional protection to that afforded by a suit on the bond.

So too we are of opinion that the obligation of a surety upon a probate bond is the same as that of the principal. The principal and the surety are jointly liable, not severally, or jointly and severally, as was the case with the bond sued on in *Briggs* v. *McDonald,* 166 Mass. 37, 40. If the surety has not been wholly discharged (*Thayer* v. *Finnegan,* 134 Mass. 62), only one judgment can be rendered against both; and that judgment is for the default of the principal, and for the amount for which he is liable. As was said by Loring, J., in *Bassett* v. *Fidelity & Deposit Co.* 184 Mass. 210, 214: "This is more than a technical rule of law, it is an instance where the true character of a surety's liability comes to the surface." The rule often has been declared by this court. See for example *Chapin* v. *Waters,* 110 Mass. 195, 197; *Choate* v. *Arrington,* 116 Mass. 552; *McKim* v. *Hibbard,* 142 Mass. 422, 428. So it was said by Wells, J., in *Choate* v. *Arrington, ubi supra* (p. 556): "The surety is liable for whatever is fairly chargeable to his principal in the official capacity on account of which the bond was given." Of course it can make no difference that in this case the principal, though named as a defendant, has not been found, has not been served on, and has not appeared. The surety is still liable for the default of the principal, and to the full extent of that default, not exceeding the amount of the judgment.

But it is upon a hearing in equity that the amount for which execution is to issue, that is, in this case, the amount of the assets which are not satisfactorily accounted for, is to be determined; and it is only to enforce payment of the amount equitably due that process is to issue. Pub. Sts. c. 143, § 20. R. L. c. 149, § 31; c. 177, § 10. *Shurtleff* v. *Ferry,* 138 Mass. 259. The amount to be paid is not necessarily the whole amount for which account has not been rendered in the Probate Court, but that which has not been accounted for either to the Probate Court, or by payments made directly to or for the benefit of the parties entitled thereto,

though made without the authority of the court, or otherwise. This was the doctrine of *Browne* v. *Doolittle*, 151 Mass. 595, although that was a proceeding against the administrator and not an action upon his official bond. So in *Forbes* v. *Allen*, 166 Mass. 569, payments made by an executor to the beneficiary of a trust created by the will but not actually established by the executor, although they were made without authority from the court, without special application to any particular claim or demand, and in excess of the amount of a legacy given directly to that beneficiary, were yet credited to the defendants (principal and surety alike, as we have seen must be the case) in an action upon the executor's bond.

Applying the principle stated to the facts before us, it appears that until the death of William H. Weston in May, 1905, the income of the fund was payable to Henry E. Weston and William H. Weston, one half to each. But upon the company's paying the amount of this defalcation in both principal and income, it would by operation of law be subrogated to the rights of these beneficiaries for life from the date of the bond by which its liability was created. *Stetson* v. *Moulton*, 140 Mass. 597. *Blake* v. *Traders' National Bank*, 145 Mass. 13. And by the joint agreement of these trustees with the company, made when the bonds were executed, they expressly created a conventional subrogation against both of them. Accordingly, if this income or any part of it should be included in the amount now to be paid by the company, as soon as it was received by the new trustee it would be his duty to pay this income over to the company as the equitable assignee of both the Westons, and this would of itself create a satisfactory accounting for that income; that is, the case would stand as if the income up to May, 1905, had been properly accounted for by the principal in the bond; and that result would have been brought about by the forced payment of that income upon the execution now to be issued, and its immediate repayment to the company. This is a needless circuity, such as the law does not favor and ought not to allow. *Railroad Co.* v. *Smith*, 21 Wall. 255. *North Chicago Rolling Mill Co.* v. *St. Louis Ore & Steel Co.* 152 U. S. 596. It is true of course that the right to subrogation strictly so called does not arise in favor of a surety until he has paid the debt for which he is bound, and there is no occasion to cite authority for the rule;

but it is also true that to avoid circuity of action equity will protect those who by an enforced payment will become at once entitled by subrogation to indemnity from the one who is to receive that payment. *Belknap* v. *Belknap,* 5 Allen, 468. *Ferrer* v. *Barrett,* 4 Jones, Eq. 455. *State* v. *Atkins,* 53 Ark. 303. And for the reasons that have been stated this defense *pro tanto* is equally available to the principal and the surety.

It follows that neither the income misappropriated nor interest on the principal sums so misappropriated, up to the date of the death of William H. Weston, or the date of the judgment if as appears that preceded his death by some days, should be included in the amount for which execution is to issue.

William H. Weston had a power of appointment by will over one half part of the fund. He exercised this power in favor of one Pratt, a creditor of his. We need not determine the validity of this appointment as against William's other creditors. Disregarding for the moment the claim set up by the company, it is manifest that if the appointment comes under the general rule that its effect was to subject the appointed property to the claims of his creditors, then the fund must be paid to the administrator of his estate for distribution among them, for his estate was insolvent. *Olney* v. *Balch,* 154 Mass. 318, 322, explaining *O'Donnell* v. *Barbey,* 129 Mass. 453. *Clapp* v. *Ingraham,* 126 Mass. 200. *Tuell* v. *Hurley,* 206 Mass. 65. See *Fleming* v. *Buchanan,* 3 DeG., M. & G. 976, and *In re Hadley,* [1909] 1 Ch. 20, 35. If it could be successfully contended that Pratt was not a volunteer and was entitled to take the appointed property in spite of any claims of creditors (as to which see *Beyfus* v. *Lawley,* [1903] A. C. 411; *In re Lawley,* [1902] 2 Ch. 673, and [1902] 2 Ch. 799; and *Patterson* v. *Lawrence,* 83 Ga. 703), then Pratt would be entitled to receive it. But the company contends that Pratt as William's appointee claims merely under the latter, and that as William's negligence was at least partially responsible for Henry's defaults, and as it is entitled against William both to the equitable subrogation of a surety and also to a full conventional subrogation under the joint agreement of Henry and William which has been stated, so it now is entitled to the full benefit of William's own interest and also of that of all who claim under him, including the principal of the one half part of the fund of which William made an appointment. But we can-

not adopt this contention. William had himself no interest in any part of the principal of the fund. *Crawford* v. *Langmaid,* 171 Mass. 309. *Sise* v. *Willard,* 164 Mass. 48. It is from the donor of the power that the property comes to him who takes it, either through the exercise of that power by its donee or by reason of the latter's failure to exercise it. *Emmons* v. *Shaw,* 171 Mass. 410, 412, and cases there collected. "The donee of the power is not the owner of the estate." Hammond, J., in *Hooper* v. *Hooper,* 203 Mass. 50, 58. William's power could be exercised only by will; he could not himself by any other act or deed give any interest in the property after his death, nor could the law by reason of any agreement or conduct of his create such an interest against those entitled to the property either by his appointment or by reason of his failure to make any. It is true that, if he had failed to make any appointment, it might have been contended that under the provisions of Nathaniel Weston's will the title to one half of the fund vested upon William's death in Henry and William as heirs of Nathaniel, and so could be taken by the company under its right of subrogation and their agreement; but that is not the case, as an appointment was made, and we need not consider what then would have been the rights either of the company or of the general creditors of William.

It follows that the company is to be charged with one half of the principal sum found by the assessor.

For the reasons already stated, the interest on the other half of this sum is not to be included in the amount for which execution is to issue. That income did belong to Henry; the right to it now is vested in the company; and it is satisfactorily accounted for by giving the benefit of it to the company. As to the principal of this half part, it is not yet ascertained who will be entitled to receive it upon the death of Henry. If he should marry and have issue, they doubtless would claim to be so entitled. If he should have no issue, but should make an appointment of the fund by will, the same questions would arise which have been stated in regard to the appointment made by William in his will. If he should die without issue and having made no appointment, it may be that his estate or the estate of William would become entitled to the fund, and there might be a question between the creditors and the company as to their respective rights. But we do not know what

the facts will be, and it would be useless to attempt to state the rules of law which will be applicable thereto. The remaining half of the sum found by the assessor must be included in the amount for which execution is to issue, but without interest. This whole amount will come into the hands of the new trustee, and will be administered by him under the direction of the Probate Court; and the rights of all parties, under whatever circumstances may arise, will then be passed upon and determined, and the accounts of the new trusteee will be stated in that court. *Cathaway* v. *Bowles,* 136 Mass. 54. *Cummings* v. *Cummings,* 143 Mass. 340. *Murray* v. *Wood,* 144 Mass, 195. *Ricketson* v. *Merrill,* 148 Mass. 76. *Thorndike* v. *Hinckley,* 155 Mass. 263. *Upham* v. *Draper,* 157 Mass. 292. *Green* v. *Gaskill,* 175 Mass. 265. *Fletcher* v. *Fletcher,* 191 Mass. 211, 217. *Rhines* v. *Wentworth,* 209 Mass. 585. *Norton* v. *Lilley,* 210 Mass. 214, 217.

Judgment was entered for the penal sum of the bond, with interest thereon. If the amount for which execution is to issue exceeds that penal sum, this was correct. *Harris* v. *Clap,* 1 Mass. 308. *Warner* v. *Thurlo,* 15 Mass. 154. *Bank of Brighton* v. *Smith,* 12 Allen, 243. *White* v. *French,* 15 Gray, 339. *Bassett* v. *Fidelity & Deposit Co.* 184 Mass. 210. *George H. Sampson Co.* v. *Commonwealth,* 202 Mass. 326, 339. *Rogers* v. *Abbott,* 206 Mass. 270, 275. *Rowe* v. *Peabody,* 207 Mass. 226, 237, 238. If this was not so, we cannot say that it was wrong. Certainly the defendant was not aggrieved, for it can be held only for the amount for which execution is to issue. The defendant has not argued this point; but we cannot pass it over, for it was expressly reserved by the report for our consideration.

It follows that the judgment must be affirmed, and that execution must issue for the sum of $123,825.99.

*So ordered.*

The second case is a bill in equity,* in which the company, the second named defendant in the first case, seeks to enjoin the prosecution of that action further than to ascertain the amount of the deficit for which the Westons are responsible, to enjoin the issue

---

* Filed in the Supreme Judicial Court on January 20, 1906, and amended on November 7, 1906, November 3, 1911, and October 25, 1912.

of any execution therein, and to have a receiver appointed to hold the interest of Henry E. Weston in the trust estate so far as made good by the company, and account to the company for the income thereof during the life of Henry, and if he should die without issue, to pay the principal to the company. For the reasons already stated, there are no grounds upon which these prayers for equitable relief can be granted. The bill is not supported by the decision in *Belknap* v. *Belknap,* 5 Allen, 468. That did not at all concern the liability or the rights of a surety on a probate bond. It was a dispute between a *cestui que trust* on one side and on the other side the other *cestui que trust,* who was also the defaulting trustee, and an assignee of his interest in the trust estate. As applied to the facts of this case, that decision goes merely to uphold the contention that if Henry E. Weston had continued to hold the office of trustee, neither he nor an assignee of his interest would have been allowed, against the objection of the other *cestui que trust,* to take any benefit of the trust by receiving either commissions or any part of either the income or principal of the trust fund until he had made good his default, and that neither he nor his assignee could be heard to say that the surety on his bond must make compensation therefor and so that he might himself take whatever was to come to him and leave his default to be made good by his surety.

In *Stetson* v. *Moulton,* 140 Mass. 597, the bill was brought after the facts had been settled and the equitable rights of the plaintiff had become vested, and the decision merely upholds the right of the surety to be subrogated to the rights and remedies which those whom he has been compelled to pay held against his principal. Both that case and the decision in *Commonwealth* v. *Gould,* 118 Mass. 300, 307, go to show that the present bill cannot be maintained. Nor can this plaintiff find any comfort in such cases as *Ingersoll* v. *Coram,* 211 U. S. 335, or *Coram* v. *Davis,* 209 Mass. 229, in which equitable claims against the shares (determined or to be determined in the Probate Court) of distributees in an estate in the course of administration were litigated. Here it has not been determined, it is not for us now to determine, and as to the share of which Henry E. Weston was to take the income it cannot now be determined by any court, who are the parties that will become entitled.

The only question is whether, under the prayer for further relief, the bill should be retained, as was done in *Lenz* v. *Prescott,* 144 Mass. 505, to secure to the plaintiff such rights as may come to it upon facts that may arise in the future. But the administration of the fund must be had in the Probate Court, and it is uncertain what facts will be hereafter developed. For example, it is not for us now to determine the liability to a succession tax of the property that has been appointed by William, or of that which will or will not be appointed by Henry. Sts. 1909, c. 527, § 8, and 1912, c. 678, § 3. *Emmons* v. *Shaw,* 171 Mass. 410. *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588. *Attorney General* v. *Stone,* 209 Mass. 186. *Burnham* v. *Treasurer & Receiver General,* 212 Mass. 165. Nor can we now declare the right of the parties to the fund, as was done in *Holmes* v. *Holmes,* 194 Mass. 552. No present ground is shown for equitable relief; and the decree of the single justice* sustaining the demurrers of the several defendants and dismissing the bill with costs must be affirmed.

*So ordered.*

*H. Wheeler,* (*H. Le B. Sampson* with him,) for the American Surety Company of New York in both cases.

*W. C. Cogswell,* for Cogswell and Jenkins.

*A. C. Vinton,* for Vinton, administrator.

*J. H. Stone,* for M. L. Pratt, submitted a brief.