MALONEY, as County Judge, Respondent, vs. McCORMICK and another, Appellants.

*May 5—June 5, 1923.*

*Executors: Nature of title to effects of decedent: Bond of executor: Liability of surety: Property received prior to execution of bond: Appeal: Record without certificate that all evidence is returned: Review.*

1. An administrator or executor who is appointed and qualifies takes title to all such property as the law vests in him from the date of the death of the decedent, and not from the date of his qualification and the execution of his bond.
2. Under the bond of an executor which covered all goods belonging to an estate which should come to his possession or that of any person for him, the surety is responsible for all property of the estate of which the executor has possession

or which he is required to reduce to possession; and it is immaterial whether such property is received before or after execution of the bond.

3. A surety having obligated itself that the principal would render a just account and inventory of all goods and chattels belonging to an estate, the performance of that duty as to goods and property obtained by the executor prior to the death of the decedent is as much within the obligation of the bond as of goods received subsequent thereto.

4. Where the certificate to the bill of exceptions does not show that all the evidence has been returned, an assignment of error based on the insufficiency of the evidence to sustain the verdict or findings cannot be reviewed.

APPEAL from a judgment of the circuit court for Barron county: W. R. FOLEY, Circuit Judge. *Affirmed.*

Action by the county judge of Rusk county against *A. H. McCormick* as principal and the *Maryland Casualty Company* as surety upon an executor's bond. It was claimed that the defendant *McCormick,* who was the executor of the estate of his deceased wife, Ida J. McCormick, and later convicted of poisoning her, had failed to account for seven items of property coming into his hands as executor. It appears that Ida J. McCormick died August 15, 1915. On the 25th day of September, 1916, *McCormick* executed the bond upon which this action is brought, with the defendant the *Maryland Casualty Company* as surety. The bond was approved upon said date, and the executor qualified and entered upon his duties. It appears that the defendant *McCormick* came into possession of two items of property before his wife's death. At the close of the testimony the referee found the items of property that came into the hands of the executor, the value at the time he received them, and the fact that as executor he had failed to account for any of them, and judgment was rendered against him and the surety for the seven items in the sum of $12,902.67. From such judgment the defendant *McCormick* and the surety appealed.

For the appellant *Maryland Casualty Company* there was

Maloney v. McCormick, 181 Wis. 107.

a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by *T. M. Thomas* of Ladysmith and *F. H. Gugel* of Milwaukee, and oral argument by *Mr. Gugel.*

VINJE, C. J. It is claimed on behalf of the plaintiff that neither of the defendants has any standing in court. Such claim is based upon the fact that previous to the trial the plaintiff sought to examine the defendant *McCormick* adversely under sec. 4096, Stats. He was then incarcerated in the state prison at Waupun. Though the proceedings for his examination were lawful and regular he refused to testify, and it appears that his attorney, representing both himself and the surety, approved and assented to such refusal. Sub. 1 of sec. 4097 provides:

"If any party lawfully required to appear and testify, as provided in this chapter, either within or without the state, shall neglect or refuse so to do, he may be punished as for a contempt and his pleading be stricken out and judgment given against him as upon default or failure of proof."

The trial court struck out the answer of the defendant *McCormick* on the ground that he refused to testify, but permitted the surety to defend the action. Both the defendant and the surety appealed. Plaintiff invokes the doctrine that a surety has no better standing in court than his principal, citing *Holden v. Curry,* 85 Wis. 504, 55 N. W. 965; *Schoenleber v. Burkhardt,* 94 Wis. 575, 69 N. W. 343; *Meyer v. Barth,* 97 Wis. 352, 72 N. W. 748; and *Wallber v. Wilmanns,* 116 Wis. 246, 93 N. W. 47. The defendants contend that the provision of the statute quoted, authorizing the court to strike out the answer of the defendant *McCormick* because he refused to testify, is unconstitutional on the ground that it unjustly and arbitrarily

prevents a party from having his day in court and from prosecuting or defending an action by reason of a delict not necessarily connected with the rights of the parties in the case on trial, and they cite *Hovey v. Elliott,* 167 U. S. 409, 17 Sup. Ct. 841; *Foley v. Foley,* 120 Cal. 33, 52 Pac. 122; *Summerville v. Kelliher,* 144 Cal. 155, 77 Pac. 889; and *Harley v. Montana O. P. Co.* 27 Mont. 388, 71 Pac. 407. In the view we have taken of this case we shall not pass upon the question as to whether or not the surety has a right to defend on appeal in a case where the principal is in contempt of court because of refusal to testify; neither shall we pass upon the constitutionality of our statute authorizing the court in such case to strike out the pleading of the party so neglecting or refusing to testify. For the purpose of the case we shall assume that the surety had a right to defend and to appeal. We shall also assume the constitutionality of our statute authorizing the court to strike out the pleading of a party neglecting or refusing to testify. We desire, however, to call attention to the fact that in the cases cited by the defendants it appears that the parties whose pleadings were stricken out were guilty of contempt of court and fines had been imposed which they had failed to pay, and that the statutes under which it was sought to justify the striking out of the pleadings provided for such a penalty whenever a party was in contempt of court for any reason. It will be noted that our statute confines the power of the court to strike out a pleading only to cases where the party is lawfully required to testify and where he neglects or refuses so to do. This is a much narrower ground, and it is always within the power of a party to prevent being in contempt of court. All he has to do is to testify as the law requires him to do. If the facts sought to be obtained under the examination are of such a nature that they will tend to incriminate him, he can always claim his constitutional privilege, and by so doing does not refuse to testify within the meaning of the statute. In this case the

defendant absolutely refused to testify as to any matter or thing connected with the subject of the inquiry. It is a serious question, therefore, whether our statute is subject to the same condemnation that the courts in the cases cited pronounced upon statutes quite different in their scope and effect, but, as before stated, we shall leave this question undecided.

The defendants further contend that the liability of the surety attaches from and after the date of the execution of the bond, and does not relate back to the time of the death of the deceased, and in support of such contention they cite the case of *Holden v. Curry*, 85 Wis. 504, 55 N. W. 965, where it was held that the surety upon a guardian's bond was liable only for defalcations taking place subsequent to the execution of the bond. They also refer to the bonds of public officials in which sureties are held liable only for defalcations taking place during the term of office, and reliance is also placed upon a statement in 1 Woerner, Am. Law of Adm. § 198, where it is in substance stated that in America the doctrine of an executor or administrator *de son tort* is not usually applied, because when an executor or administrator is appointed his title attaches by relation from the time of the decedent's death. This latter statement, we conceive, can logically sustain only a contrary position, because it declares that the executor or administrator takes title from the time of the death of the decedent whenever he is appointed and does not attach to him only from and after the date of his appointment and the execution of his bond, as in the case of a guardian.

The doctrine is well established that, whenever an administrator or executor is appointed and qualifies, he takes title to all such property as the law vests in him from the date of the death of the decedent, and not from the date of his qualification and the execution of his bond. *Ellyson v. Lord*, 124 Iowa, 125, 99 N. W. 582, and cases cited; *Choate v. Arlington*, 116 Mass. 552; *Scofield v. Churchill*, 72 N. Y.

565; 24 Corp. Jur. 1062. And the surety, both by virtue of the recitals in the bond, which were to the effect that the executor should, within the time allowed by law, return a true and perfect inventory of all the goods belonging to the estate which should come to his possession or to the possession of any person for him and should render a true and just account of his administration to said court within one year; and by virtue of the obligations imposed upon him by law, becomes responsible for all property belonging to the estate which the executor has possession of or which he is required by law to reduce to his possession; and it is immaterial whether or not the failure to account relates to property received before or after the execution of the bond. The rule is stated in 24 Corp. Jur. 1062, as follows:

"The general rule is that the sureties are liable for assets of the estate which their principal received before as well as after the execution of the bond, in case of the principal's conversion or maladministration in respect of such assets or failure to render due account thereof."

This rule is well sustained by the authorities. *Bassett v. Fidelity & D. Co.* 184 Mass. 210, 68 N. E. 205; *Harmon v. Weston,* 215 Mass. 243, 102 N. E. 470.

In the present case the executor failed to file an inventory showing any of the property found in this case to have been received by him, and the time for filing such inventory and rendering a true account thereof had long since expired by statute. The surety obligates himself by his bond that the principal will render a just and true account and file a just and true inventory of all goods and chattels belonging to the estate of which he has knowledge. The performance of this duty as to goods and property obtained prior to the death of the decedent is as much within the obligations of the bond as of goods received subsequent to the death of the deceased. If the executor had filed a just and true inventory of the goods that came into his possession before the death of his wife, and if it should appear that he was finan-

cially unable to repay the value of such goods, an entirely different question would arise as to whether or not the surety would be liable for the value of the goods so obtained. But even in such a case the surety has been held liable on the ground that when the executor accepts the office he agrees to pay what he owes the estate and is estopped to contest his debt and the surety agrees that he will pay it. *Bassett v. Fidelity & D. Co.* 184 Mass. 210, 68 N. E. 205; *Harmon v. Weston,* 215 Mass. 243, 102 N. E. 470. But that is not the case here. The executor has been guilty of a breach as executor and the surety must respond for the damages occasioned by such breach.

Claim is also made by the defendant that the evidence does not sustain the findings of the referee, which are confirmed by the court, as to the conversion of some of the items and as to their value. We can express no opinion upon that assignment of error because the certificate of the judge to the bill of exceptions does not show that all the evidence has been returned. In such case this court cannot review assignments of error based upon an insufficiency of the evidence to sustain the verdict or the findings. *Charles v. Godfrey,* 125 Wis. 594, 104 N. W. 814. We have, however, looked into the evidence returned, and, if that be all the evidence there was, we are of the view that the findings cannot be set aside as contrary thereto.

*By the Court.*—Judgment affirmed.