THOMAS J. LYON *v.* DANIEL R. OSGOOD AND WIFE, CHARLES T. AND ABIGAIL S. BARTON, DUDLEY C. AND CLEORA M. BROWN.

[In Chancery.]

*Executor.   Surety on Probate Bond.   Equity Jurisdiction.*

1. SURETY—EXECUTOR INSOLVENT. When an executor is insolvent at the time of his appointment and is indebted to his testator, his failure to pay his debt is not a breach of trust for which a surety on his probate bond is liable; and, if in such case the executor in his accounting treats his own debt as available assets and the Probate Court decrees distribution accordingly, the surety is not bound by the decree; and a court of equity has jurisdiction and will grant relief.

2. The worthless debts of an executor due to the testator affect the liability of the surety in the same way that those do due from any other party; thus, the executor owed $9,508; his property was worth $4,300; $2,000 were given by the will to the executor and $1,000 to his wife; the present worth of the other legacies considered as annuities was $2,686.27; in accounting the executor's whole debt was treated as available funds. The surety brought a bill in equity against the executor and other legatees, alleging the insolvency of the executor and his fraud in procuring the surety to sign the probate bond. All the legatees answered except the executor and his wife; *Held,* that the surety be absolved from all liability to the executor and his wife as legatees, but that the bill should be dismissed as to the other legatees,—as the amount of their legacies was less than the actual value of the executor's property when he was appointed.

3. EXECUTOR'S FRAUD. The result is the same although the executor, to induce the surety to sign the bond, made false representations to him as to the condition of the estate.
4. The surety cannot go back of the decree of distribution, and show that the executor had a claim against the testator, which should have been applied on his note.

BILL IN CHANCERY. Heard on pleadings and master's report, September Term, 1885, VEAZEY, Chancellor.

Bill, *pro forma* and without hearing, dismissed. The bill alleged the insolvency of the executor, when he was appointed; that he "represented to the orator that said estate was all in funds and readily convertible and mostly coming to him, said Osgood, and so situated as to be closed up within six months, and thus induced the orator to become surety upon his said executor's bond in the sum of $10,000"; that one of the legatees had commenced a suit to recover her legacy; that the presentation by said Osgood to said Probate Court of the balance of said note, as available funds or means of said estate in the hands of said executor for distribution by said court among said legatees, was, and was known by said executor and said legatees to be, a fraud upon and would work great wrong and injustice to the orator, and prays that said decree of distribution may be vacated and held inoperative against the orator.

The prayer was, that an investigation be had as to the value of the executor's note; that an injunction may issue restraining further proceeding in the suit at law; and that the orator may be absolved from all liability upon said bond for any legacy or decree of said Probate Court awarding any sum to said Osgood or his heirs, and to the said Lydia A. Osgood, the wife of said Daniel R. Also all liability to either of the other devisees or their or either of their heirs, except for such share or shares of said legatees under said will as shall have been paid or collected on said note or of the value of said note, to be ascertained by said Court of Chancery.

The other facts are stated in the opinion.

Lyon *v.* Osgood.

*W. H. Smith* and *W. C. Dunton,* for the orator.[a]

Mrs. Osgood is as much entitled to her share as either of the others. The husband could not reduce it to his possession. *White* v. *Wait,* 47 Vt. 502. The settlement in the Probate Court was a gross fraud on the orator, and a court of equity has jurisdiction. *Viele* v. *Hoag,* 24 Vt. 46, 51; *Holmes* v. *Holmes,* 36 Vt. 538; Story Eq. Jur. ss. 590, 496; *Harker* v. *Irick,* 10 N. J. Eq. (2 Stock.) 269; *Holmes* v. *Holmes,* 36 Vt. 529.

The English courts, since the days of the Year Books, have treated the debt as paid, and some of our American courts have held such a debt to be funds in hand, but our own courts have fixed some limitations to the rule. *Adams* v. *Adams,* 22 Vt. 50; *Kinney* v. *Ensign,* 18 Pick. 232, 235-36.

*E. J. Ormsbee* and *J. C. Baker,* for the defendants.

The adjustment of this executor's account, and the ascertainment of the amount in his hands, is a judgment *in rem,* fixing the status of the estate and charging the legacies upon it. The surety upon the executor's bond is bound by that judgment. *Robinson* v. *Swift,* 3 Vt. 283; *Rix* v. *Smith,* 8 Vt. 365; *Probate Court* v. *Merriam,* 8 Vt. 234; *Sparhawk* v. *Buell,* 9 Vt. 41; *Probate Court* v. *Van Duzer,* 13 Vt. 135; *Richardson* v. *Merrill,* 32 Vt. 27; *Cheetham* v. *Ward,* 1 B. & P. 630; *Freakley* v. *Fox,* 9 B. & C. 130; 17 E. C. L. 343.

The surety is liable. *Stearns* v. *Gaylord,* 11 Mass. 255; *Winship* v. *Bass,* 12 Mass. 199; *Mfg. Co.* v. *Story,* 5 Met. 310; *Kaster* v. *Pierson,* 27 Iowa, 90; *Leland* v. *Fulton,* 1 Allen, 531.

This whole subject has recently been before the Supreme Judicial Court of Massachusetts, and all the cases in that State, as well as many in other jurisdictions, including the English cases, are thoroughly reviewed. The case of *Kinney* v. *Ensign* is declared to be exceptionable and its authority confined to the facts upon which it was decided, and not in contravention of the general doctrine. *Tarbell* v. *Jewett,* 129 Mass. 457; *Choate* v. *Thorndike,* 138 Mass. 371;

*Harker* v. *Irick,* 2 Stock. 269; *Norris* v. *Towle,* 54 N. H. 290; *Benchley* v. *Chapin,* 10 Cush. 173.

The opinion of the court was delivered by

WALKER, J.   The administration bond which was executed by Daniel R. Osgood as principal and Thomas J. Lyon, the orator, as surety, to the Probate Court upon Osgood's appointment as executor of the will of Alexander Barton, was in the usual form and conditioned for the executor's inventorying and accounting for all the assets of said Barton's estate, and for the faithful performance of his trust as such executor.   From the master's report it appears that the estate was inventoried and appraised at $9,935.82, which sum was made up of personal property appraised at $427, and a note which Osgood was owing the testator, dated September 30, 1873, on which there was due at the time of appraisal, March 10, 1877, the sum of $9,508.82.   On the 8th day of January, 1878, Osgood, after due publication of notice for that purpose, rendered his administration account to the Probate Court charging himself with the inventory, $9,935.82, and crediting himself with sundry disbursements amounting to $523.41, and with $250 paid on legacies to Charles, Cleora, and Abigail, making $773.41, leaving an apparent balance in his hands of $9,162.41, as to which final decree of distribution was made on the same day according to the provisions of the will and from which no appeal was taken.

In making the payments allowed in his account, Osgood paid of his own funds $346.41, which should be treated as a payment on his note.

The orator had no knowledge of this settlement until suit was brought against him on the bond.   It also appears from the master's report that Osgood at the time of his appointment and at the time of rendering his administration account was not solvent; that his whole property did not exceed in value the sum .of $4,300 when appointed,

Lyon *v.* Osgood.

and that his financial condition had not improved at the time of rendering his account; and that, with the exception of $331 paid to the legatees, Charles, Cleora, and Abigail, in 1879 and in 1881, he has used in the support of his family and lost in unfortunate business ventures all his property and is now worthless.

The defendants, Osgood and wife, made no answer to the bill of complaint. The other defendants made answer and claim that the Court of Chancery has no jurisdiction of the subject-matter of the orator's complaint and that the decree of the Probate Court treating the amount of the executor's indebtedness to the estate of Barton as available assets is conclusive against the surety on the executor's bond.

The ground of the orator's complaint is that the executor's accounting to the Probate Court for the whole amount of his indebtedness to the estate as assets in his hands, when, in fact, its collectable value was less than one half the amount due thereon, was a fraud upon him and does him great injustice.

The orator was not a party to the accounting nor was he necessarily so. His liability to pay attaches on the failure of the executor to pay the legatees according to the decree of the court, and his right to defend against the decree for fraud or mistake is not barred by the action of the Probate Court. The decree is undoubtedly conclusive against the surety unless it works a fraud upon him. If he has been defrauded by the accounting or decree his remedy is in the Court of Chancery, where the peculiar rights of sureties originated and have always been considered, and which always interposes to relieve against fraud and prevent gross injustice. If the executor had charged himself in the accounting with $1,000 which were not assets of the estate and the Probate Court had made distribution thereof to the legatees and they had brought suit at law upon the executor's bond to enforce the decree against the surety

upon default of his principal, it would not be contended that the Court of Chancery had not jurisdiction to give the surety relief against such a fraudulent decree. Such is the ground of the orator's complaint here; and we think upon principle and authority the Court of Chancery has jurisdiction. *Ordinary* v. *Kershaw,* 14 N. J. Eq. 527.

The orator insists that he should be absolved from all liability upon the bond for any decree of the Probate Court, awarding any sum to the executor or his heirs and to Lydia Osgood, his wife, and also from all liability to the other legatees, Charles, Cleora, and Abigail, and their heirs, except such portions of their legacies as have been paid on the note or of the collectable value of it which has been ascertained by the master to be $4,300.

It is contended by the defendants, answering, that when Osgood was appointed executor of his creditor's will he became thereby liable to account for his indebtedness to the estate in his administration account, and the surety on his administration bond also became responsible for such indebtedness; that is, that the appointment of the debtor as such executor, whether solvent or insolvent, operated as a payment of the whole debt to the executor as actual money assets of the estate. Where the executor is solvent there is no question but that the rule contended for by the defendants is the true one, and the surety would be holden for the whole debt; because the executor had the means wherewith to pay and discharge the debt. This was held to be the law in *Probate Court* v. *Merriam,* 8 Vt. 234, wherein the court held it was the duty of a solvent executor or administrator to inventory and account for any notes or obligations which the deceased held against him and which were due and payable; and that his surety on his bond was liable for his default therein.

This rule of treating the debt as paid to the executor rests wholly on technical grounds and should not be extended so as to work injustice. While upon the ground of

policy it may be well to hold that the executor is estopped from showing he cannot collect his own debt and that his debt should be treated as paid to him in his representative capacity, because he cannot sue himself; yet such estoppel should not be used as a fact from which the ability of the executor to pay his debt must be inferred, or as establishing the fact of actual money assets of the estate in his hands to the amount of the debt for which the surety must stand responsible. Chief Justice SHAW in *Kinney* v. *Ensign*, 18 Pick. 232, says: " The holding the fact of a debtor taking administration upon the estate of his creditor to be a payment may be deemed a legal fiction, adopted for the · purposes of justice and convenience, as well as from considerations of policy, and calculated generally to promote justice, but such legal fiction will never be allowed to go so far as to work wrong and injustice."

Although debts of all description due to the testator are assets, yet the executor is not to be charged with them until he has received the money. 2 Will. Ex. 1022. The general rule with respect to what shall be assets in the hands of an executor to charge him, is, all those goods and chattels, actions and commodities, etc., which were of the deceased in right of action or possession, and which, after his death, the executor gets into his hands as duly belonging to him in right of his executorship, and nothing else, shall be said to be assets in the hands of the executor to make him chargeable. 2 Will. Ex. 1012; Touchstone, 496.

If the executor is not chargeable with the debts as assets until he has received the money thereon when not guilty of laches, he should not be held chargeable, as regards the liability of his surety, for his own indebtedness beyond his actual means or ability to pay; for only to that extent does he, by his appointment, receive money from himself belonging to the estate. His ability to pay his indebtedness is the extent of the assets in his hands upon his obligation to the deceased. The surety by signing the administration

bond has aided him to get possession of assets from his in-
debtedness only to the extent of his ability to pay it; and
he should not be held liable for a greater sum on such in-
debtedness, unless the executor after his appointment be-
comes able to meet and discharge a.greater sum.

The executor's bond is conditioned for the faithful ad-
ministration of the assets and a faithful performance of the
duties of the trust; and the surety should be held charge-
able only according to the terms of the bond for the default
of his principal.   If, at the time the surety assumes respon-
sibility, the executor is able to pay his debt to the estate or
afterwards, during the settlement of the estate, he becomes
able to pay it, the surety is responsible for it as assets.   The
executor's failure to account for his debt, when he has the
power and means to pay it, is a gross violation of his duty.
It cannot be held to be a breach of trust for the executor
not to do what is beyond his power and control to perform
when free from laches.   Where the executor holds a note
in favor of the testator against any other person than him-
self, which is uncollectable, he is not charged with it in his
administration account.   Upon what principle should there
be a distinction made in the degree of fidelity required as
to a worthless obligation which the deceased held against
his executor so far as relates to the surety's liability?   The
law, to secure fidelity and faithful administration of assets,
wisely requires a bond with ample sureties for the faithful
performance of the trust and makes the surety responsible
for any failure of the executor's fidelity.   If the inability to
collect a note against another is not a breach of duty, why
should the inability of the executor to pay his own indebt-
edness work a breach of trust and bring responsibility upon
his surety beyond the executor's actual means to meet his
debt?   Both debts were the unfortunate investments of the
deceased in his lifetime, and both should be governed by
the same rule in measuring the responsibility of the surety.
There is no more ground under the terms of the bond for

compelling the surety to make the worthless debt of the one good than the other.

The extension of the legal fiction of payment so as to make the surety liable for the executor's debt beyond his means to pay, when not guilty of laches, would often work great injustice to the surety. The surety ought not to be required to contribute from his own funds to make up an estate for the deceased which he, in fact, was not possessed of at the time of his death. It is true the executor is bound to use vigilance and diligence in pursuing and collecting all claims due the estate, and any unnecessary delay which results in the loss of a claim against another person or in the loss of his own indebtedness is a violation of his duty, for which the surety is responsible; but in the absence of laches we think the surety is liable upon his bond for the executor's debt only to the extent of the executor's ability to pay it.

When the executor is unable to pay his debt, it is his duty in rendering his administration account to claim credit for his lack of means to pay his debt for the protection of his surety and on his failure to do so relief will be granted by the proper tribunal. *Garber* v. *Commonwealth*, 7 Pa. St. 265; *Piper's Estate*, 15 Pa. St. 533; *Gottsberger* v. *Smith*, 5 Duer, 566. In *Harker* v. *Irick*, 10 N. J. Eq. (2 Stock.) 269, Chancellor WILLIAMSON, in his opinion, says: "If a person become surety for one as administrator, who at the time is a debtor to the estate and is insolvent and is never able to discharge such indebtedness, such surety is not bound for such a delinquency of his principal. He is only bound for the faithful performance of his duties as administrator. If, under such circumstances, the administrator should, in the settlement of his account with the court, charge himself with the debt and the account should be passed in such a shape as to bind the surety for the debt, the surety would be relieved upon application to the proper tribunal from such responsibility. It would be fraud upon the surety to exact the debt from

him whether the administrator did or did not contemplate a fraud."

We think the orator's liability as surety upon Osgood's executor's bond rests upon the rule herein laid down supported by the decisions of the courts cited.

At the time the orator assumed responsibility as surety Osgood had property to the amount of only $4,300 which he could have applied towards the extinguishment of his indebtedness to the estate; he had no more when he rendered his administration account and has not since had. The executor should have been credited in his account with the excess of his indebtedness above $4,300. This would have shown the amount of actual assets in his hands for distribution to be $3,953.59, for which the orator as surety was responsible to the general legatees excepting Osgood, whose legacy would have been properly cancelled by a corresponding amount of the worthless part of his indebtedness.

The testator bequeathed to his daughter, Lydia Osgood (the wife of the executor), $1,000; to his son Charles $3,000, payable in annual installments of $100 each; to his daughter Abigail $1,000, payable in twenty annual installments of $50 each; to his daughter Cleora $1,000, payable in ten annual installments of $100 each; to the executor $2,000.

The master has found that the present worth, at the time of the testator's death, of the legacies to Charles, Abigail, and Cleora, considered as annuities and payable according to the terms of the will, was $2,686.27. So that the sum of $3,953.59, for which the surety was responsible on a proper rendition of the executor's account, was more than sufficient, after paying the $1,000 legacy to Mrs. Osgood, to pay the legacies to Charles, Abigail, and Cleora, treated as annuities. No equity then arises to the orator from the insolvency of Osgood against the defendants, Charles, Abigail, and Cleora.

The fact that Osgood supported Mr. Barton and his family from the date of the note until two years before his death without charge or pay therefor can be of no avail to the

orator on his bond; for the reasons urged in argument, first, that all claims in favor of Osgood against the estate of Barton were adjusted and foreclosed by the settlement of the executor's administration account and the decree of distribution; and second, that the $5,000 and upwards of Osgood's note, which was in excess of his ability to pay, was more than sufficient to pay for this support. No equity arises therefore to the orator by reason of this support.

The orator, by signing Osgood's administration bond, enabled him to get possession of all the collectable assets of Barton's estate, and he must stand responsible for the same to the defendants who have answered the bill of complaint, notwithstanding the fact that Osgood, to induce him to sign the bond, falsely represented the condition of the estate; these defendants were in no way connected with the fraud.

It was the duty of the executor to hold and keep the assets of the estate where they could be made available for paying the legacies as they fell due. It is wholly immaterial to the surety what use the executor put them to, or that they were lost in business; on the executor's default in respect thereto the surety must make the loss good.

The result is, that the decree of the Court of Chancery is affirmed so far as relates to the defendants, Charles, Abigail, and Cleora, and reversed so far as relates to Osgood and wife, who have not answered the bill, and cause remanded with a mandate that a decree be entered for the orator, according to the prayer of the bill, against Osgood and wife, and that the bill be dismissed as to the other defendants with costs.