# CHARLESTON.

State *for use of* C. S. Farmer, Adm'r v. Citizens Trust & Guaranty Co.

Submitted October 7, 1919.   Decided October 14, 1919

1. Pleading—*Motion to Strike Out Plea Has Effect of Demurrer.*

   A motion to strike out a plea has the same effect upon the legal sufficiency thereof that a demurrer thereto would have had. (p. 732).

2. Executors and Administrators—*Extent of Liability on Official Bond Defined.*

   A surety on the official bond of an administrator or executor, where there is no statute or stipulation in the bond to the contrary, obligates himself only to account for losses occasioned by the failure of the fiduciary to use due diligence in pursuing and collecting claims owing to the estate, and to make proper application of the assets that come into his hands. (p. 732).

3. Same—*Limit of Liability of Official Surety of Insolvent Administrator.*

   A debt due from a personal representative to the estate which he represents is not for all purposes to be regarded as money on hand; but where at the time of his appointment and qualification such representative was insolvent and unable to pay his debt, and so continued throughout the period of his administration, there being no laches on his part, such debt is to be treated as any other debt owing to the estate, and the surety on his official bond is not liable thereon for more than could have been enforced against the principal at any time within such period. (p. 732).

4. Same—*Limit of Liability of Insolvent Husband, Administrator of Wife's Estate.*

   Where the principal in a bond given by a husband as administrator of his deceased wife, the chief assets of whose estate she acquired by will from her deceased father, upon whose estate the husband as executor of the will also administered, but without bond, the will so providing, did not in his lifetime account for or deliver to the wife, except in part, the estate so devised and bequeathed to her, and died leaving the residue unadministered, the surety on his official bond as such administrator, when sued thereon by the administrator of the unadministered assets of the wife's estate, may, to defeat recovery, plead, rely on and show the inability of the principal therein to pay the

same to the wife's estate after her death, because of the insol-
vency of the principal during the entire period covered by his
administration of her estate.    (p. 732).

Certified Questions from Circuit Court, Wood County.

Action of debt by the State, for the use of C. S. Farmer,
administrator de bonis non of the estate of Beulah Wester-
man, deceased, against the Citizens' Trust & Guaranty Com-
pany. ' Plaintiff's motion to strike a plea from the file denied,
and ruling certified.

*Ruling of circuit court sustained.*

*A. C. Chapman,* for plaintiff.
*Kreps, Russell & Hiteshew,* for defendant.

LYNCH, JUDGE:

Plaintiff, as administrator de bonis non of the estate of
Beulah Westerman, daughter of W. S. Wiley, deceased, and
wife of C. G. Westerman, deceased, who qualified and became
the administrator of the estate devised and bequeathed to
her by the will of her father, brought against Citizens Trust
& Guaranty Company, surety on Westerman's bond as ad-
ministrator, this action of debt on the bond to recover assets
belonging to her estate in the hands of Westerman unadminis-
tered at the date of his death; and to defeat recovery there-
on defendant, in addition to nil debit, conditions performed
and conditions not broken, pleaded specially the insolvency of
Westerman from the time he qualified as such administrator
to the date of his death.   This plea the court refused to
strike from the file on plaintiff's motion, but did certify its
ruling thereon to this court to test the correctness thereof,
thus presenting the single question whether, because of such
insolvency, any liability on the bond attached to the defend-
ant as surety therein.

The decisions of this state furnish no precedent or criterion
to guide us in reaching a proper conclusion upon this propo-
sition.   What is not less embarrassing, we meet at the outset
a contrariety of judicial opinion whenever the question has
been discussed.   The facts may be gathered from the opinion
in *Morris* v. *Westerman,* 79 W. Va. 502, which, so far as they

are now important, are these:   C. G. Westerman qualified
as executor of the will of W. S. Wiley about January 22,
1903, in Wetzel County, but without bond, the will specifically
dispensing with the indemnity.   Beulah Wiley took under the
will the greater part of the valuable estate of her father, only
part of which came into her hands either through her husband
or from any other source at any time while her husband
had charge of her father's estate.   Subsequently Mrs. West-
erman died and her husband became the administrator of her
estate, and gave the bond on which this action is brought to
enable him to qualify as such, and who did so qualify and did
administer upon her estate until the date of his death; where-
upon plaintiff became the administrator of the unadminister-
ed assets, and brought this action to recover from the surety
on Westerman's official bond that portion of her father's
estate which her husband, first as his executor and then as her
administrator, had failed to turn over to her or, after her
death, to her estate.

The condition of the administration bond involved here is
that the principal, "C. G. Westerman, administrator of the
estate of Beulah (or Mrs. C. G.) Westerman, deceased, shall
faithfully pay the rents and profits or proceeds of said estate
which may lawfully come into his hands, or to the hands of
any person for him, to such person or persons as are entitled
thereto, and shall in all other things well and truly discharge
his duties as such administrator."

The special plea filed by defendant sets up by way of de-
fense the following:   "That C. G. Westerman was at the
time he was appointed and qualified as administrator of the
estate of Beulah Westerman, deceased, insolvent, and * * *
continued to be insolvent during the entire period that he
was administrator, * * * to-wit, up until the date of his death,
* * * and that at no time during the said period * * * could
the said debt decreed (in *Morris* v. *Westerman*) as owing
from the estate of C. G. Westerman, deceased, to the said C.
S. Farmer, administrator d. b. n. of the estate of Beulah
Westerman, deceased, have been collected from the said C. G.
Westerman; and that at no time during the aforesaid period
* * * could a greater amount have been collected from C. G.

Westerman upon the aforesaid debt than was actually recovered and received * * * from and out of the estate of C. G. Westerman, deceased.''

Whether Westerman in fact was or was not insolvent when his wife died or when he died, or in the meantime, is immaterial so far as this discussion is concerned. For that purpose the facts set up in the plea are taken as true, for a motion to strike has, we think, the same effect upon the question of the sufficiency of a pleading as a demurrer thereto would have had. Besides, like every other material fact alleged by a pleading, Westerman's insolvency as set up in the special plea is a fact to be proved by him who relies on it by way of defense, in this instance the surety in the fidelity bond. We are dealing now only with the right of the defendant to plead and rely on insolvency to exonerate itself from the liability sought to be enforced against it, and, if it can, to sustain the plea by necessary proof the burden of which rests upon it.

The single question presented is whether the allegation of the insolvency of the administrator during the time covered by his administration and his consequential inability at any time during the administration to collect the debt owed by him to the estate of his wife constitutes a valid defense to the action instituted against the surety on his official bond. As already indicated, instead of there being a general concurrence, there is a marked lack of harmony among the judicial decisions upon the question. This confusion is largely due to the diversity of authority at the common law as to the manner of treating a debt owed by a personal representative to his decedent at the time of his appointment. Many courts by a legal fiction treat such debt as immediately liquidated and as constituting assets in the hands of the representative from the moment of his qualification, upon the theory that, as the personal representative cannot demand or receive payment of himself, or sue himself, and since he is bound to account for his own debt as for all other debts, the law presumes that he has done what he is legally bound to do, and therefore charges him with the amount as a debt paid.

What is generally known as the ''Massachusetts Rule'' upon the subject seems to have been announced as early as 1814

in *Stevens* v. *Gaylord*, 11 Mass. 256, and since followed not
only in that state but in many others, and in substance and
effect, as stated at pages 268-269, is: "As soon as the debtor
is appointed administrator, if he acknowledges the debt, he
has actually received so much money, and is answerable for
it.   This is the result with respect to an executor, and the
same reason applies to an administrator; as the same hand is
to receive and pay, and there is no ceremony to be performed
in paying the debt, and no mode of doing it, but by consider-
ing the money to be now in the hands of the party in his
character of administrator. * * * The consequence is that he
and his sureties in the administration bond are liable for the
amount of such a debt in like manner as if he had received
it from any other debtor of the deceased."   The rule was
further extended in *Leland* v. *Felton*, 1 Allen 531, to apply
to debts due to the estate of a testator from the executor nam-
ed in his will, though the latter was insolvent at the time he
accepted the trust, and although he had never charged the
debts in his account, and an account had been allowed in
which they were not included, but were mentioned as notes
which it had been impossible to collect, and though he had re-
signed his trust, and an administrator de bonis non had been
appointed in his place.   The later case of *Bassett* v. *Fidelity
& Deposit Co.*, 184 Mass. 210, adheres to the same rule and
holds that the surety on an executor's bond is liable for the
full amount due the testator from an insolvent firm of which
the executor was a member, although the firm and the execu-
tor were insolvent at the time the latter assumed the trust.
The reasoning relating to this conclusion is that an executor
or administrator is appointed for the sole purpose of en-
forcing in behalf of those interested in the estate the rights
of the estate against others.   "For that reason," says the
court, "on broad principles of policy it was laid down by the
common law of England that he must yield all controversy
as to the debt due from himself and treat it as an asset
of the estate," since "no one is bound to accept the office,
and if he elects to do so, he thereby tacitly assents to this
condition."   The Massachusetts court has recognized no dis-
tinction in the application of this doctrine to assignees in in-

solvency cases (*Benchley* v. *Chapin*, 10 Cush. 173) ; to guardians (*Mattoon* v. *Cowing*, 13 Gray 387) ; and to receivers in insolvency cases (*Commonwealth* v. *Gould*, 118 Mass. 300).

The Supreme Court of Oregon endorses the same doctrine in *United Bretheren* v. *Akin*, 45 Or. 247, and holds the sureties on the bond of an executor liable for the amount of his personal debt to the estate, though they executed the bond without any knowledge of indebtedness by the executor to the decedent, or of the executor's insolvency and inability to pay the debt. This holding, however, seems to be warranted by a statute of that state, as it is perhaps by statutes of other states, providing that an executor of an estate shall be liable for any claim of the testator against him, ''as for so much money in his hands.''

The attempt to compel the sureties of an executor or administrator, the rule being the same in each case, to pay a debt due from him to the estate administered, when, had another person not so indebted been appointed as such, he could not possibly have collected it because of the continued insolvency of the debtor, certainly may frequently be fraught with serious consequences, and for that reason ought not to be sanctioned without due consideration, especially when no warrant can be found therefor other than the legal fiction that such a debt is to be treated as so much cash belonging to the estate at the time of the appointment—a fiction adopted and approved, it is said, merely for the purpose of justice and convenience. But if such were the purposes, its application ought not to be extended to cases where gross injustice will result. The rule necessarily must be based upon a presumption that all men are solvent and able to pay their obligations, but since that presumption is obviously not true in fact, to enforce the rule under all circumstances may work great hardship. When applied to a case where the personal representative was insolvent at the time of his appointment and so continued until his death or discharge, a peculiar injustice might be caused by placing him in such a position that he might be charged with contempt or embezzlement for failure to pay over moneys with which he is charged, but which he has never received, since he was not able to pay, or by charging his sure-

ties with liability beyond the faithful discharge of the duties of such personal representative, and in effect making them guarantors of such debts due the estate instead of sureties. Despite these evident hardships there are some states which enforce the strict rule of liability against the representative and his sureties irrespective of his continued insolvency and inability to pay. *Bassett* v. *Fidelity etc. Co., supra; United Brethren* v. *Akin, supra; Wright* v. *Lang,* 66 Ala. 389; *Arnold* v. *Arnold,* 124 Ala. 550; *Probate Judge* v. *Sulloway,* 68 N. H. 511; *McGaughey* v. *Jacoby,* 54 Ohio St.487; *James* v. *West,* 67 Ohio St. 28; 2 Woerner, Amer. Law of Administration (2d Ed.), § 311; 11 R. C. L. 118; Note, 2 Ann. Cas. 355; Note, 112 A. S. R. 409.

But the better rule, as it seems to us, is that followed by the majority of courts, which, while treating the liability as money on hand for administration purposes, properly considered, do not so deem or treat it for all purposes, but place the duty of the fiduciary toward his own debt to the estate upon the same level as other debts due thereto. Such rule does not make of the surety a guarantor of the payment of the debt owed by the personal representative, the collection of which, had it been owed by any other, would have been excused· upon proof of the continued insolvency of such debtor.

Thus, as remarked by the Supreme Court of Vermont in *Lyon* v. *Osgood,* 58 Vt. 707, 715: "The extension of the legal fiction of payment so as to make the surety liable for the executor's debt beyond his means to pay, when not guilty of laches, would often work great injustice to the surety. The surety ought not to be required to contribute from his own funds to make up an estate for the deceased which he in fact was not possessed of at the time of his death. * * * In the absence of laches we think the surety is liable upon the bond for the executor's debt only to the extent of the executor's ability to pay it." *Harker* v. *Irick,* 10 N. J. Eq. 269, restates the same proposition.

The Supreme Court of Kentucky in *Buckel* v. *Smith's Adm'r,* 26 Ky. L. 991, 82 S. W. 1001, puts the debt of an administrator or executor on the same footing as a debt

owed to the estate by any other person. Besides the fiction already referred to, there is apparent no solid foundation on which to base a difference between the two liabilities. The sureties, where there is no statute to the contrary, such as necessarily would operate as notice to them, obligate themselves only to account for losses occasioned by the failure of the fidicuary to use due diligence in pursuing and collecting claims owing to the estate, and to make proper application of the assets that come into his hands. But where he was always insolvent, and for that reason wholly unable to pay a debt owed by him to the estate, upon what theory of justice, propriety, public policy or lawful right, other than the mere fiction referred to, can the sureties be compelled to respond for such unavoidable failure?

The bond executed by deceased and his surety does not purport to impose absolute liability. Its condition is (1) that the principal shall faithfully pay the rents and profits. or proceeds of the estate which may lawfully come into his hands, or to the hands of any person for him, to such person or persons as are entitled thereto; and (2) shall in all other things well and truly discharge his duties as such administrator. With respect to debts other than his own the personal representative is chargeable only with the faithful discharge of his duty to make a prompt and efficient attempt to collect them, and when such collection is rendered impossible by the insolvency of the debtor, his surety is not responsible therefor. Debts owed by the representative should be treated in the same manner, and when at the time of his appointment, and continuing until his discharge or death, he was insolvent and unable to collect such debt from himself, his surety should not be responsible for that which no diligence could have prevented. Such is the rule followed in the great majority of states. Re Walker's Estate, 125 Cal. 242; Sanchez v. Forster, 133 Cal. 614; State v. Gregory, 119 Ind. 503; Buckel v. Smith's Adm'r, 26 Ky. L. 991; Sanders v. Dodge, 140 Mich. 236; McCarty v. Frazer, 62 Mo. 263; Howell v. Anderson, 66 Neb. 575; Harker v. Irick, 10 N. J. Eq. 269; Baucus v. Barr, 45 Hun 582, affirmed in 107 N. Y. 624; Matter of Piper, 15 Pa St. 533; Rader v. Yeargin, 85 Tenn.

486; *Lyon* v. *Osgood,* 58 Vt. 707; 2, Woerner, Amer. Law of Administration (2d Ed.), § 311; 11 R. C. L. 118; Note, 2 Ann Cas. 355; Note, 112 A. S. R. 409.    See also, *Wachsmuth* v. *Penn. etc. Ins. Co.*, 241 Ill. 409.

Of course, if the personal representative was solvent when he assumed the duties of his office and later became insolvent and unable to pay his debt, or if he was insolvent at first but later became solvent, the surety might well be liable for a default under such circumstances, as many cases hold, though, according to the averments of the special plea, such question is not now presented.    The averments of that plea, if proved upon the trial of the case, will constitute a bar to the action.

No other questions are properly presented in the record for our consideration at this time.    Our order, therefore, will affirm the ruling upon the motion to strike out the special plea, and direct the certification of our decision to the circuit court of Wood County.

*Ruling of circuit court sustained.*