# Richmond

## GLENS FALLS INDEMNITY COMPANY V. MARY JOSEPHINE WALL, ET ALS.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*E. P. Barrow* and *B. A. Lewis,* for the appellant.

*White & Temple,* for the appellees.

GREGORY, J., delivered the opinion of the court.

Mary Josephine Wall, residuary legatee and devisee of John C. Rawlings, deceased, W. E. Elmore, Adm'r d. b. n. c. t. a., and Commonwealth of Virginia at the relation of Mary Josephine Wall, instituted their suit against N. Turnbull, executor of John C. Rawlings and Glens Falls Indemnity Company, the surety of the said executor. The object of the suit was to recover of N. Turnbull, executor and the Glens Falls Indemnity Company, a debt of $3,251.-30, which was due and owing from N. Turnbull to John C.

Rawlings during his lifetime. The trial court, by its decree decided that the Indemnity Company, by virtue of its suretyship became liable for the debt of the said Turnbull, who later qualified as the executor of John C. Rawlings. From that decree an appeal was allowed.

John C. Rawlings died testate on January 31, 1931, and in his will, which was duly admitted to probate, he named N. Turnbull, his executor. On February 16, 1931, the latter qualified and entered into bond for $15,000, with the Glens Falls Indemnity Company, as surety, for the faithful performance of his duties as such executor. Mary Josephine Wall was devised and bequeathed all the rest and residue of the Rawlings estate after certain specific bequests were satisfied and the debts paid.

During the lifetime of Rawlings he had loaned to N. Turnbull and Marguerite, his wife, two certain sums of money; one $1,050, which was unsecured and the other $2,500, the latter sum being secured on certain real estate which upon default was sold and the proceeds of $500 applied on said note. After the death of Rawlings and the qualification of Turnbull, the said two notes aforementioned, subject to the credit mentioned and other credits for interest, came into the hands of Turnbull, executor. Turnbull remained as executor from February 16, 1931, the date of his qualification until June 29, 1931, when he was committed to the insane asylum. W. E. Elmore was then appointed Adm'r d. b. n. c. t. a. of said estate and has since been administering it. When Elmore qualified, Marguerite Turnbull, who had theretofore been appointed committee of N. Turnbull, paid the balance of the assets of the Rawlings estate over to Elmore. At this time she turned over to Elmore the two notes which have been referred to.

On April 9, 1931, while Turnbull was administering the estate he withdrew therefrom the sum of $500 and paid it to himself for commissions. The commissioner of accounts was directed to ascertain if said executor was entitled to commissions of $500. He reported commissions due Turnbull of $397.61, and allowed the same as a credit on the

$1,050 note and reported the amount to be turned over to Elmore as $4,627 instead of $4,127 the actual amount that was turned over by Mrs. Turnbull to Elmore. Glens Falls Indemnity Company tendered to the attorney for the complainant $102.39 which was the difference between the $500 drawn by Turnbull as his commissions and the $397.-61, the amount allowed by the commissioner. The Indemnity Company, now admits that it is liable for the $500 commissions. Nothing else need be said about this item.

In October, 1932, the court entered a decree against N. Turnbull, executor, Marguerite Turnbull, his committee, and Glens Falls Indemnity Company for the aggregate amount of the two notes which was $3,251.31. Later, executions having been issued were returned "No effects." The Glens Falls Indemnity Company is the sole appellant.

The record shows, beyond all doubt, that N. Turnbull, at the time he qualified as executor was insolvent; that he has remained so at all times since and that at no time since his qualification has he been able to pay the debt he owes the Rawlings estate. The record also shows conclusively that Mrs. Turnbull was insolvent during that particular time and that she has taken the benefit of the bankruptcy laws.

The single question to be answered in this case is whether or not the surety on the bond of an executor is liable for the pre-existing debt of the executor due the estate of the testator when the said debtor-executor was insolvent before the death of the testator and remained so during the entire time of the administration of the estate.

At common law the appointment of a debtor as executor operated as a release or extinguishment of the debt. Various reasons were assigned for this rule. By some it was said that the appointment suspended the right of action and being once suspended by the voluntary act of the creditor, it was gone forever. By others it was said that the appointment was regarded as a specific legacy to the debtor for the express purpose of discharging the debt. But whatever may have been the reasons for the rule, it was subject to well established exceptions. For instance it

was never applied against the creditors of the testator unless there were sufficient assets to pay all debts. Courts of equity would not permit the testator in this way to voluntarily withdraw from his estate funds necessary for the payment of creditors. Again, the rule was never applied where a different intent was manifest from the will. The rule has been long since abolished in Virginia by statute and it is now provided in Code, section 5377, that "the appointment of a debtor as executor shall not extinguish the debt." No such provision was made with reference to administrators because none was necessary. The granting of administration being the act of the law, its acceptance by the debtor was never permitted to work a release or extinguishment of the debt. The distinction between the appointment of an administrator and an executor is obvious. In the former case as we have seen the appointment was not the voluntary act of a creditor but the act of the law, while in the latter case the appointment was the voluntary act of the creditor. (See the opinion of Judge Staples in *Utterback's Adm'r* v. *Cooper,* 28 Gratt. (69 Va.) at page 264.)

In Virginia, the question of the liability of a surety for the executor's own pre-existing debt due the estate when he was insolvent prior to his qualification, and remained insolvent thereafter, has never been decided by this court. Therefore we must look to other jurisdictions for guidance. There is serious conflict of judicial opinion on the question. There are two well established rules. In 8 A. L. R. at page 84, there is found an exhaustive note in which all of the cases are collected and a number of them discussed.

Counsel for the appellee is relying upon *Caskie* v. *Harrison,* 76 Va. 85, and *Schmelz* v. *McMenamin,* 119 Va. 227, 89 S. E. 126, as sustaining his view that the debt of the executor is conclusively presumed to be paid and is assets in his hands to be administered and for the faithful distribution of said assets the surety has become responsible by executing the bond.

In *Caskie* v. *Harrison, supra,* the court referred to

three Massachusetts cases which applied the well known "Massachusetts rule." These cases are based on the legal fiction that the appointment of a debtor as executor of· a deceased creditor operates as a payment of the debt, and it becomes so much money in the hands of the executor for which he and his sureties· are liable. In the· case of *Schmelz* v. *McMenamin, supra,* the court referred to the *Caskie Case* and held that it was controlling of the *Schmelz Case* and applied the rule that where a person is liable to pay money in one capacity, and to receive it in another, the law presumes he has done his duty within his power, and holds his sureties responsible in case he fails to do it. From this it is argued that Virginia has unqualifiedly adopted the Massachusetts rule. In the two Virginia cases relied upon the parties sought to be charged, whether in a·fiduciary capacity or otherwise, had actually received into their hands funds belonging to the estates and had failed to properly account for them as such fiduciaries. In the *Caskie Case* the court said that one of the questions was·"whether James Caskie is to be held· answerable as executor, or merely as surviving partner, for the funds which came into his hands after the death of John Caskie, and which are the subject of this controversy." That these funds would be properly accounted for was a part of the obligation of the bond of the executor. In addition to this there was no question of the fiduciaries' solvency or insolvency presented. Certainly where an executor is insolvent when he qualifies and remains so through the entire administration of his testator's estate the law will not conclusively presume that his debt to the estate is paid and is cash in his hands to be disbursed for this would be presuming the· impossible.

In 8 A. L. R. at page 84 there appears the note to which we have already referred. The annotator has collected all of the cases which have been decided in the United States. He states the Massachusetts rule thus: "A minority of the American jurisdictions have followed and adopted the so-called 'Massachusetts rule' to the effect that the bond of an executor or an administrator covers a debt owing from

the representative to his testator or intestate, irrespective of his ability to pay the same." The annotator then says: "This rule seems based on the legal fiction that the appointment of a debtor as the personal representative of the deceased creditor operates as a payment of the debt, which becomes so much money in the hands of the administrator for the due accounting of which he and his sureties are liable." This rule seems to have been applied in Alabama, Massachusetts, New Hampshire, Ohio, Oregon, and South Carolina. A complete list of the cases in which these states have applied the minority rule is set out in the note referred to.

The majority rule is stated by the annotator in said note, to be "that the bond of an administrator or executor covers a personal debt owed by the principal to the decedent only to the extent that it binds him to a faithful performance of his duties as administrator; that is, he must exercise due diligence and honesty in the collection of debts, including a debt owed by himself, and the sureties are liable for his failure to do so. But where it appears that the debtor-representative is unable to pay, the debt becomes uncollectible, and the sureties on the bond are not liable therefor." The majority rule has been applied in the United States courts, Connecticut, Illinois, Indiana, Iowa, Kentucky, Maryland, Michigan, Wisconsin, Nebraska, New Jersey, New York, North Carolina, Pennsylvania, Tennessee, Vermont, and West Virginia. The cases will not be set out here. They are fully listed in said note. In several of the states statutes have been enacted which have considerable bearing upon the question.

We think the majority rule is more in accord with reason and logic and certainly more equitable to be applied in such cases. No mere rule of legal fiction should be permitted to supplant and submerge justice, otherwise well defined. The language of the West Virginia court in the well considered case of *State of West Virginia for use of Farmer* v. *Citizens' Trust & Guaranty Co.*, 84 W. Va. 729,

100 S. E. 685, 687, 8 A. L. R. 79, is applicable here. The court, speaking through Lynch, J., said:

"The attempt to compel the sureties of an executor or administrator, the rule being the same in each case, to pay a debt due from him to the estate administered, when, had another person not so indebted been appointed as such, he could not possibly have collected it because of the continued insolvency of the debtor, certainly may frequently be fraught with serious consequences, and for that reason ought not to be sanctioned without due consideration, especially when no warrant can be found therefor other than the legal fiction that such a debt is to be treated as so much cash belonging to the estate at the time of the appointment —a fiction adopted and approved, it is said, merely for the purpose of justice and convenience. But if such were the purposes, its application ought not to be extended to cases where gross injustice will result. The rule necessarily must be based upon a presumption that all men are solvent and able to pay their obligations; but since that presumption is obviously not true in fact, to enforce the rule under all circumstances may work great hardship. When applied to a case where the personal representative was insolvent at the time of his appointment, and so continued until his death or discharge, a peculiar injustice might be caused by placing him in such a position that he might be charged with contempt or embezzlement for failure to pay over moneys with which he is charged, but which he has never received, since he was not able to pay, or by charging his sureties with liability beyond the faithful discharge of the duties of such personal representative, and in effect making them guarantors of such debts due the estate instead of sureties. * * *

"* * * Thus, as remarked by the Supreme Court of Vermont in *Lyon* v. *Osgood*, 58 Vt. 707, 715, 7 Atl. 5, 8: 'The extension of the legal fiction of payment, so as to make the surety liable for the executor's debt beyond his means to pay, when not guilty of laches, would often work great injustice to the surety. The surety ought not to be required

to contribute from his own funds to make up an estate for the deceased, which he, in fact, was not possessed of at the time of his death * * *: In the absence of laches, we think the surety is liable upon his bond for the executor's debt only to the extent of the executor's ability to pay it.'"

This language is so strikingly applicable to the case at bar that little else need be said.

As we have previously seen, N. Turnbull, the executor was insolvent when he qualified and remained so until the time he was committed to the insane asylum. Never during the time he was executor was he able to pay his debt to the estate. Some of the witnesses say he was "hopelessly" insolvent during the time he was executor. To hold the surety here for this debt would in effect be requiring it to contribute from its funds to make up an estate for the deceased which he in fact was not possessed of at the time of his death. As to the debts other than his own, the executor was charged with the duty of making a faithful and diligent effort to collect them. If he could not have collected them on account of the insolvency of the debtors, his surety would not have been liable on the bond therefor. There is no valid reason why debts owed by the executor who is insolvent and unable to pay them at any time during the administration, should be treated differently. In such circumstances it would be manifestly unjust to require the surety to become liable for the worthless debt of the executor. Such was never contemplated in the contract of suretyship.

We are of opinion that the decree should be reversed; that the Glens Falls Indemnity Company is liable only for the $500 which the executor improperly paid himself as commissions and for said amount with interest from April 9, 1931, a judgment is now awarded against said Indemnity Company and in favor of the appellee.

*Reversed.*