IN RE GUARDIANSHIP OF SNYDER: SNYDER, Appellant, vs. SNYDER, Guardian, and another, Respondents.

*February 9—March 9, 1937.*

Jos. F. *Studnicka* of Milwaukee, for the appellant.

For the respondents there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

FOWLER, J. The contentions of the appellant ward are: (1) That the court should have allowed interest on the ward's $1,500 from the time the mother misapplied the fund instead of from the time the ward became twenty-three years of age; and (2) that this interest should be compounded. The bondsman of the guardians claims, (3) that neither the mother as guardian nor the successor guardian is under obligation to pay the ward any part whatever of his $1,500 legacy because the mother had converted the $3,000 legacies to her own use before she was appointed guardian; (4) that the mother as guardian should be credited with the value of the care and keep of Donald during his minority; and (5) that the guardians should be credited with the amounts of the annual premiums chargeable by the surety as consideration for signing the bonds.

(1) The trial judge considered that the mother as guardian held the $1,500 for Donald, and that it was held subject to the terms of the will as to the time of payment. To settle the guardian's account properly when the ward became twenty-one a trustee should then have been appointed to hold the $1,500 until the ward became twenty-three. This trustee would have been required to pay only the $1,500. Such interest as he collected on the fund would not have belonged to the ward but to the estate of the father. As the mother as guardian did not settle with the ward when such settlement should have been made, she and her bondsman should be held responsible to Donald for what a trustee would have been liable for but for no greater sum. The mother as guardian is impressed with full responsibility of a trustee had one been appointed, but any accrual of the fund that would have resulted from proper investment would not belong to the ward, but to the decedent's estate. The rights of the ward and his mother as guardian should be adjudged on the same basis as they would have been had the mother continued to act as

guardian and settled her guardian's account when the ward became twenty-three and became entitled to the $1,500 under the terms of the will. She is therefore chargeable as guardian with interest from that time.

(2) The claim for compound interest falls with the claim for interest. If technically there was a conversion of the $3,000 by the mother by using funds of the estate to purchase the farm, or by taking the purchase-money note and mortgage in her own name when she sold the farm, such conversion occurred before she became guardian and is beside the case. Whether buying the residence and the bakery business and taking title in her own name be considered as a conversion or an improper investment is immaterial. In either case the ward was only entitled to be paid $1,500 when he became twenty-three years of age. He is entitled to be indemnified for the loss he sustained through the mother's misconduct, but nothing more. This indemnity the judgment awards him. The only fund we are concerned with is the $1,500, for the ward settled with the successor guardian for the amount due him for his grandfather's bequest. It was stipulated at the last hearing that if $1,500 was the principal sum payable to the ward $1,430 of it was payable by the mother as guardian and $70 of it by the successor guardian. The court's judgment is based upon the stipulation. The bondsman cannot object to the amounts adjudged, if either, or both, of the guardians are liable for the principal sum.

(3) We cannot agree with respondents' contention that the mother is not accountable as guardian. In her petition for appointment as guardian she recited that the "personal estate of the said minors is of the probable value of $3,000." She was required to give a bond of $4,000 to secure the safe-keeping of this sum. Her bondsman for a premium paid signed her bond as such security. She gave a receipt to herself as executrix, signed by herself as guardian, for $3,000

designated in the receipt as the distributive share of Emmett and Donald under the will. This receipt was given after she was appointed guardian. At the time the receipt was given and the bond was executed, the mother had a mortgage taken in her own name securing a note for $10,000 which covered the $10,000 bequeathed by the will to her and the two boys, $7,000 to her and $3,000 to the boys. This note and mortgage represented the $10,000 for which she so receipted. The boys were the equitable owners of a $3,000 interest in that note and mortgage. The mother acknowledged their such interest in the inventory of the ward's estate filed upon her appointment as guardian. That mortgage was presumably worth its face. It does not appear that it was not. At any rate it was worth $3,000, and as the mother took the title in her own name she thereby became bound as trustee to devote so much of the avails of the mortgage as was necessary to make good the interest of those for whom she held it in trust. The mother therefore in fact had in her possession at the time she became guardian $3,000 belonging to her wards invested in a note secured by a real-estate mortgage, and must be held to account for the amount so invested.

The case of *Holden v. Curry,* 85 Wis. 504, 55 N. W. 965, is relied on as supporting the respondents' claim that the bondsman of the mother as guardian is not liable. It is there stated that a guardian's bond is "no protection or security to the ward for any interference or intermeddling with his property by his guardian before he was appointed such." In that case Parmley was administrator *de bonis non* of the estate of Martin Phelan. In this estate $300 was assigned to a minor. Richard, a brother of decedent, gave to Parmley a receipt stating he had received from Parmley as administrator *de bonis non,* $300 "the full share of said estate" of the minor, signing the receipt as guardian of the minor. He was not the minor's guardian when he signed the receipt. Some time

later Richard was appointed the minor's guardian. The $300 receipted for was not in fact paid by the administrator *de bonis non* to Richard, but he accepted in lieu of cash, an order of the administrator *de bonis non* upon Joseph, another brother of decedent, who had been overpaid by the original administrator of the Martin Phelan's estate. Joseph refused to accept this order, and it was never paid. The suit was on the bond of the administrator *de bonis non,* not on the bond of Richard as guardian. It is said in the opinion that a guardian's bond is no protection against acts of the person appointed guardian done before he was appointed. If this be granted, the receipt here given was given after the appointment as guardian, while the other was given before; and the receipt here given was for money's worth, while the other was for a worthless order. These two factual differences sufficiently distinguish the case from the instant one. And if Joseph had paid Richard the $300 on the order, we surmise that in a suit on Richard's bond as guardian the court would have held him and his bondsman liable for that sum.

The claim of the respondents here is that the mother should be held to account as executrix and not as guardian. As to liability as guardian under such circumstances, it is stated in Woerner, Guardianship, page 344, that if one is both executor and guardian, and as executor transfers to himself and charges himself as guardian, and actually has funds at the time he so charges himself, he must account as guardian. If in such circumstances by some unequivocal act he charges himself as guardian, he is accountable as guardian. The transfer in such case must be of substantial assets. If the person be insolvent and there is in fact nothing in his hands to transfer, he cannot shift his liability as executor on his bondsman as guardian. The cases there cited seem to support the text. *Myers v. Wade,* 6 Rand. (Va.) 444, 447; *Adm'r of Johnson v. Johnson's Ex'r,* 2 Hill Eq. (S. C.) 277,

284; *Simkins v. Cobb,* 2 Bailey (S. C.), 60, 64; *Crenshaw v. Crenshaw,* 4 Rich. Eq. (S. C.) 14; *State v. Tunnell,* 5 Har. (Del.) 94. To the same effect is *Taylor v. Deblois,* Fed. Cas. No. 13,790, 4 Mason, 131. Cases are cited by respondents in support of their contention, but most of them are clearly distinguishable. In *Switzer v. Switzer,* 201 Mo. 66, 98 S. W. 461, there was no transfer of funds, but a mere credit as executrix and a charge as guardian, and there was no fund in hand. In *Re Johnson's Appeal,* 12 Serg. & R. (Pa.) 317, the guardian did not receive the fund from the executor, and the guardian was not the same person as the executor. *Hindman v. State,* 61 Md. 471, and *Hinckley v. Probate Judge,* 45 Mich. 343, 7 N. W. 907, apparently support the respondents' contention, but in neither of these cases did the probate court in settling the decedent's estate, purport to authorize the payment of the fund by the executor to himself as guardian as it did here. There was here a judgment of the probate court settling the account of the executrix and providing that she stand discharged upon the filing of receipts showing payment of the "residue of the estate to the parties [adjudged] entitled thereto." A receipt was filed by the guardian for the amount of the fund bequeathed to the minors, and this receipt was apparently at the time considered by the court as effecting discharge as executrix and accountability as guardian. The court perhaps erred in not appointing a trustee under the will to hold the fund for the minors until they became twenty-three years of age, and in not requiring a receipt from the trustee as a condition of discharge, but the court's error in this respect, if there was one, does not exonerate from liability on the guardian's bond, when court, executrix, and bondsman all considered the guardian was accountable for the fund. On this understanding the bondsman procured its own agent to be appointed as successor guardian, settled with Emmett for his $1,500 legacy, and on such settlement ac-

knowledged and promised to pay Donald the full amount of his $1,500 legacy. The mother's accounts as guardian show payments by her of premiums to her surety as consideration for signing her bond as guardian. Under all these circumstances it would be manifestly inequitable and unjust to relieve the bondsman from liability. The rule as stated in Woerner, Guardianship, *supra,* seems to us equitable and just and to have ample support upon authority. Moreover the holding of this court in *Hutson v. Jenson,* 110 Wis. 26, 85 N. W. 689, is, in effect, in accord with that rule. The facts of that case were that insurance payable to the "family" of a decedent was paid to the decedent's widow as executrix of his will and included in her account as executrix. The widow was guardian of the decedent's minor children. The minor children as members of the "family" were entitled to share in the insurance. The mother being guardian, and having actually received the share of the money belonging to her wards, was held accountable to them as guardian and her bondsman was held liable on her bond. It is true that it was held that the payment to the widow as executrix and her accounting as executrix were improper, that the payment of the minor children's share should have been made to her as guardian, and that she should have included the amount in her account as guardian. But the real ground of the decision was that having received money belonging to the wards the guardian must account for it as guardian, however it came into her hands, and this is the basis of our ruling in the instant case.

(4) It was held in *Hutson v. Jenson, supra,* that where a mother as guardian of her minor children made no charge in her accounts as guardian for their care or keep, the surety on her bond could not be credited with anything for that item. The accounts filed by the instant mother as guardian show that there was no intent on her part to charge the $1,500

legacy with any sum for care and keep. She filed three accounts as guardian in which she claimed credits for support of the wards to the amount of six per cent interest on $3,000 with which she charged herself. None of these accounts was approved by the court. On the hearing the mother made no claim for expense of support of the ward. The testimony showed that the whole sum of $10,000 was used up in the support of the family and otherwise by 1923. After that date "the boys, Tom, George, Carl and Emmett" supported the family. Donald was seven years old when the father died. Donald was self-supporting after becoming eighteen, and before that aided in his support by selling newspapers. It was stipulated that $200 a year would be the reasonable cost of the ward's support if any sum should be allowed. The trial court denied any allowance, on the ground that the fund was not shown to be liable for the ward's support. The $3,000 was by the will to be paid to the boys "when they become twenty-three years old, provided however, they have both been good and dutiful sons to their mother and aided her to the best of their ability." It was shown that Donald fully complied with this condition. It is manifest that the father did not intend any deduction from the $1,500 for support of the boys, and that the mother did not make any claim for deduction from it while she was acting as guardian. In view of this and the rule first above stated, we are of opinion that the county judge properly denied credit on the account for support of the ward.

(5) The county judge disallowed the bondsman's claim for credit for premiums on the bond on the ground that there was no necessity for having a guardian appointed. The mother in fact paid for the first premium on the bond, and it was stipulated that thereafter the annual premium was $10.67, one half of which if allowed should be chargeable to the fund payable to Donald. We are of opinion that this allowance

should have been made, up to the time when Donald became twenty-one years of age. The judgment of the county court should be modified accordingly.

*By the Court.*—The record is remanded with instructions to modify the judgment in accordance with the opinion. As so modified, the judgment is affirmed. No costs will be awarded to either party on the appeal. The clerk's fees will be taxed against the appellant.